J. B. MOON, *as Sheriff of Lyon County,* V. E. HELFER.

1. CONTINUANCE, *Refusal of; Discretion not Abused.* On March 17, 1880, the counsel of the defendant in an action then pending and at issue in the district court, announced in open court that if his client could procure the depositions of certain parties in A. before the 23d instant following, he would be ready for trial, and asked the case to be set down for trial certain on that day. This was done by the court, with the consent of plaintiff. On the 24th instant following, after the depositions of all the parties at A. had been procured, except that of one witness, who appeared and testified for defendant upon the trial, the defendant made an application for a continuance, supported by the affidavits of said counsel, setting forth in general terms the need of more time for preparation, and specifically stating that additional time was necessary to obtain proof outside of the state that plaintiff had knowledge of the indebtedness and insolvency of S., (which was material in the case,) but failed to set forth in the affidavits the names of the absent witnesses and the specific facts which he believed each of the witnesses would prove, although it was apparent from the facts disclosed in the affidavits that he might have done both by the use of proper diligence. *Held,* No abuse of discretion on the part of the trial court to refuse the continuance.

2. ——— A judgment will not be reversed on account of the admission of immaterial evidence, not prejudicial to the party complaining.

3. NEW TRIAL, *Rightly Refused.* The trial court commits no error in refusing to grant a new trial on account of newly-discovered evidence, in the absence of a sufficient showing of diligence to obtain the same at the trial.

4. ——— *Newly-discovered Evidence.* In order to grant a new trial for newly-discovered evidence, it must be so material as that the court can say it would probably produce a different verdict.

### *Error from Lyon District Court.*

ACTION brought by *Helfer* against *Moon,* to recover the sum of $15,000, the alleged value of certain goods of which plaintiff claimed to be the owner, taken by the defendant as sheriff of Lyon county, under various orders of attachment issued in certain actions pending against one Nathan Stetter. Trial at the March Term, 1880, of the district court, when the court instructed the jury, in writing, as follows:

" 1. The plaintiff in his petition alleges that on the 22d

day of December, 1879, he was the owner of a large stock of merchandise, consisting of dry goods, clothing, boots and shoes, hats and caps, and notions, of the aggregate value of $9,128.28; that at said time he was carrying on the business of a merchant in the city of Emporia, Lyon county, Kansas; that on the 23d day of December aforesaid, the defendant, being the sheriff of said county, levied several writs of attachment upon said goods, wares and merchandise,. and thereby wrongfully converted the same to his own use, to the plaintiff's damage in the sum of $15,000.

"2. The sheriff in his answer admits that he was and is the sheriff of Lyon county, as alleged in plaintiff's petition; and for a defense to the plaintiff's action says, that on the 23d day of December aforesaid, he, as sheriff, had in his hands various orders and writs of attachment against the goods and chattels of one Nathan Stetter, who was legally indebted to divers attaching creditors; that he levied said writs of attachment upon the goods in controversy, which said goods at the time belonged to and were owned by said Nathan Stetter. Defendant further alleges that the sale of the goods in question by said Nathan Stetter to plaintiff was fraudulent, and made with the intent and for the purpose of hindering, delaying and defrauding the creditors of the said Nathan Stetter, and that plaintiff had full knowledge of such fraudulent intent at the time of said sale to him.

"3. Fraud is never presumed, but must be proved by the party asserting it. . It is very seldom that fraud can be established by direct evidence; and it is usually shown, if at all, by circumstantial evidence.   There are certain facts or things which the law denominates badges of fraud; for instance, if a party in failing circumstances or largely indebted should make a sale of his goods to a near relative; or, if he should sell for a price greatly inadequate in value; or, if a sale should be made on an unusually long credit; or, to an irresponsible person without being secured; or, if made in unusual haste and not made in the manner in which men of ordinary care and prudence usually transact their own affairs — these and similar acts are badges of fraud.   They are not fraud, but may be considered, when they exist, by the jury as facts and circumstances which may tend to show fraud.   A person greatly indebted and in failing circumstances may sell and give a good title to his property.   It would be a great misfortune if such persons could not, as that is often the only

means they have of paying honest debts. The law forbids such sales only as are made for the purpose of and with the intent of either hindering, delaying or defrauding creditors.

"4. The unlawful conversion of goods consists in the un-authorized acts of one person over the goods of another. If the plaintiff owned the goods in question when the defend-ant took them in attachment, this would be a conversion to his own use.

"5. The law makes every gift, grant or conveyance of goods or chattels made or obtained with the intent to hinder, delay or defraud creditors of their just and lawful debts, utterly void and of no effect. In order to render a sale of goods utterly void under the above law, the purchaser of the goods must have notice or knowledge that the sale is being made by the seller with such fraudulent intent; therefore if Nathan Stetter sold the goods in controversy to the plaintiff with the intent to hinder, delay and defraud his creditors, and the plaintiff was ignorant of such intent, and bought the goods in good faith for a valuable consideration, then the plaintiff would take a good title to the goods; but if the sale of the goods by Stetter to the plaintiff was under such a state of facts or circumstances as would lead a man of ordi-nary and usual caution to suspect that the sale was being made with a fraudulent intent, then the plaintiff would be chargeable with notice of such fraud, and would take no title to the goods. If the transfer of the goods in question was made to plaintiff by the agent of Nathan Stetter for the purpose of placing them beyond the reach of legal process, so as to delay the creditors of Nathan Stetter, then in law there would be legal fraud, and the sale would be void as against the creditors of Stetter.

"6. It is admitted that the several claims set up and de-scribed in the defendant's amended answer were valid, exist-ing and *bona fide* claims against Nathan Stetter, at and before the time when the merchandise in question was levied upon by the defendant with the writs of attachment in his hands at the time, and at and before the time of the alleged sale of said goods to the plaintiff, if there was any such sale.

"7. It is proved, and not disputed, that Max N. Stetter, the witness who testified, is, and has for a long time been the duly-authorized agent of his father, Nathan Stetter, in the conduct and management of his father's mercantile business, carried on in the cities of Atchison, Emporia, and New-

ton; therefore any contract entered into by said agent for the sale and transfer of said stock of goods, or any arrangement he might make with any of the creditors of his father, would be as valid and binding upon Nathan Stetter as if he, Nathan, had personally made them. It matters not whether the sale of the goods in question to the plaintiff by said agent was made in good faith and for an honest purpose, or whether it was made in bad faith and for the purpose of hindering, delaying, or defrauding the creditors of Nathan Stetter; in either event the said Nathan Stetter is bound thereby. If made in good faith, he has the benefit resulting from it. If made in bad faith, he must abide by the consequence resulting therefrom.

"8. In this action, the burden of proof is on the plaintiff to satisfy the jury by a preponderance of evidence that he was the owner of the goods in controversy, and that the defendant had unlawfully converted them to his own use at the time this action was commenced. The burden of proof is likewise on the defendant to satisfy the jury by a preponderance of evidence that the alleged sale of the goods to plaintiff by Nathan Stetter through his agent, Max N. Stetter, was fraudulent, and that the plaintiff had knowledge of such fraud. Actual knowledge is not necessary. A knowledge of facts sufficient to excite the suspicion of a prudent man, and to put him on inquiry, or to lead a person of ordinary perception to infer fraud, and the means of knowing by the use of ordinary diligence, amount to notice, and are equivalent to actual knowledge in contemplation of law; and all these facts and circumstances need not be established [by direct] evidence, for this can seldom be done, for the reason that fraud, if committed, is usually committed in secret and privately, and surrounded by all the guards which can be invoked to prevent discovery and exposure. It is therefore usually established by circumstantial evidence.

"If the jury find for the plaintiff, his measure of damages will be the cash value of the goods at the time of the conversion, with interest thereon at the rate of seven per cent. per annum from the time of conversion, unless you find from the evidence that the acts and conduct of the defendant in relation to the seizure of the goods were malicious or so grossly negligent as to amount to willful wrong, in which case you may add to your verdict exemplary damages not to exceed the amount claimed.

" If the jury believe from the evidence that the plaintiff was the owner of the goods in controversy at the time they were taken by writs of attachment by the defendant (if you so find), this, in law, would be a conversion of the goods to the defendant's use, and you will find for the plaintiff. On the contrary, if you believe from the evidence that the transfer of the goods to plaintiff was for the purpose and with the intent to hinder, delay or defraud the creditors of Nathan Stetter·in the collection of their just debts, and the plaintiff, at the time of such transfer, had knowledge of such facts and circumstances as would cause a prudent man to suspect fraud, you will find for the defendant. When a party in possession of property belonging to another purchases the same, there need be no formal delivery of the property from the seller to the purchaser to make the sale good as against the claim of creditors, so far as the delivery of possession is concerned."

Verdict and judgment for plaintiff, for $9,292.78. The defendant brings the case here.

*H. M. Jackson, W. McN. Clough, A. Gillett,* and *J. J. Buck,* for plaintiff in error.

*Sterry & Sedgwick,* and *W. W. Scott,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: On the 20th day of January, 1880, the defendant in error (plaintiff below) brought this action against plaintiff in error (defendant below), in the district court of Lyon county, to recover the sum of $15,000, being the alleged value of certain goods, wares and merchandise, of which he claimed to be the owner, taken by plaintiff in error, as sheriff, under various orders of attachment issued in actions pending against one N. Stetter. On the 16th day of February, 1880, plaintiff in error filed his answer alleging the levy upon the goods by virtue of the writs of attachment; that the claim of defendant in error was under a pretended purchase from Stetter; that the purchase was fraudulent and void as against his creditors; and that the sale by Stetter to Helfer was made with the intent to hinder, delay and defraud the creditors of Stetter. A reply was filed in the form of a gen-

eral denial to this answer, the 8th day of February, 1880. The March term of court for Lyon county convened March 2d, 1880. Plaintiff in error, with the consent of parties and by leave of court, filed an amended answer, more particularly alleging the same defense stated in the original answer, to which defendant in error on the same day replied. The case was then called for trial. Afterward the jury returned a verdict for defendant in error, and against the plaintiff in error, for $9,292.78.

The first allegation of error is, the refusal of the trial court to grant a continuance of the cause over the term. The application for the continuance was supported by affidavits of H. M. Jackson, one of the attorneys of plaintiff in error, a member of the law firm of Messrs. Greenlee & Jackson, of Atchison, the attorneys for several of the attaching creditors in the actions pending against N. Stetter. They set forth substantially two reasons in support of the application: first, that defendant had not had time after issue joined, owing to the circumstances surrounding the case, to prepare for the trial at that term; second, on account of the absence of evidence, which defendant had been unable to procure.

As the affidavits did not conform to the requirements of § 317 of the code, the question presented is, whether there was any error in the action of the court under § 316. Granting or refusing a continuance under the provisions of that section is so largely within the discretion of the trial court, unless it appears that the court has abused its discretion, that this court cannot reverse the ruling. The record discloses that on March 17th Mr. Jackson announced in open court, that if his client could procure the depositions of certain parties in Atchison before the 23d, he would be ready for trial, and asked the case to be set down for trial certain on that day. This was done by the court, with the assent of the opposing party. The affidavits set forth the failure to procure the depositions of only one Atchison witness, viz., M. N. Stetter; but as he appeared and testified on the trial on the part of defendant below, any error there might have been in

overruling the application on account of the absence of his evidence was thereby wholly cured. The other statements in the affidavits were for time to obtain the testimony of attaching creditors, to the purport that at and before the levy of the several attachments the persons named as creditors of N. Stetter in the amended answer were the actual, *bona fide* creditors of N. Stetter to the amounts stated in the answer; that if time was granted it could be proved that Helfer was the purchasing agent of N. Stetter, and knew of his indebtedness; that proper preparation for the trial of the cause on the part of the defendant required an investigation into facts and circumstances existing in and known to parties residing in the cities of New York, Chicago and St. Louis, which were material to the defense; that such facts and circumstances came to the knowledge of the attorneys of defendant within only one week prior to such application, and that they had no time to obtain proof thereof since the issue was joined. On the hearing of the application the plaintiff offered to and afterward admitted that the parties named as creditors at the levies of the attachments were the actual and *bona fide* creditors to the amount set forth in the answer; and the fact that plaintiff had been a purchasing agent for N. Stetter was fully proved on the trial, and undisputed. Exactly what was expected to be established by the facts and circumstances existing and known to the parties residing in New York, Chicago and St. Louis, other than that those facts and circumstances would tend to prove matters offered to be admitted, and plaintiff's knowledge of the indebtedness of N. Stetter, was not stated.

Therefore, the only matter of importance in the application to be seriously considered was the request for time to obtain proof that plaintiff had knowledge of the indebtedness and insolvency of N. Stetter. Now in these days of fast mails and faster telegraphic communication to all parts of the country, it is evident from the facts disclosed in the affidavits, the defendant ought to have been able by the exercise of due diligence to have set forth in support of his application the names of the absent witnesses, and the facts in detail which he be-

10 — 25 KAS.

lieved each of the witnesses would prove. This not having been done, we cannot say that the court abused its discretion. In view of the amount involved, the brief pendency of the action and various circumstances connected with the case, the court might well have allowed the continuance; and of course if the court had granted the application, we would not interfere.

Objections are also taken to the admission in evidence of the power of attorney executed February 27, 1869, by N. Stetter to M. N. Stetter, and the exclusion of certain evidence of one Henry Friend. As N. Stetter fully ratified the action of M. N. Stetter in making the sale to plaintiff, whether the power of attorney authorized the sale was wholly immaterial. Its introduction could not have prejudiced the defendant on the trial, and as the principal made no objection to the action of his agent, it does not lie in the mouth of defendant to insist that such principal was deceived or acted in ignorance of his rights. The evidence of Friend was not competent on cross-examination, and its rejection not injurious in any view, as defendant proved all the facts attempted to be brought out on the cross-examination of Friend by M. N. Stetter, and the proof was undisputed.

As to the instructions, in view of their great length it is useless to reproduce them here. The trial court gave the law fully to the jury, with the single exception that we perceive in the record no special reason for the charge about exemplary damages. Yet this is not sufficient, even if erroneous, for a reversal of the judgment, as the jury only assessed the damages at the value of the property at the time of the conversion, as proved by witnesses, adding seven per cent. interest thereto.

It is finally alleged that the verdict is against the evidence, and that the court erred in not granting a new trial for newly-discovered evidence. Upon the first point, as we cannot say that there was a total want or failure of evidence to sustain the verdict, we cannot disturb it. The jury were the sole judges of the credibility of the witnesses, and although there

was much testimony before the jury tending to throw grave suspicion upon the sale to plaintiff, and even sufficient to have fully justified a verdict for the defendant below, yet, as the evidence of some of the witnesses fully sustains the verdict, it must stand.    We cannot say that those witnesses must be disbelieved, after the jury and the trial judge, with better opportunities for judgment, have thought otherwise.

In regard to the alleged newly-discovered evidence, no sufficient showing of diligence to obtain the same was made; nor could the trial court fairly say that the evidence was so material that upon another hearing, if granted, it would probably produce a different verdict.

The record in this case is very extensive.    We have examined it with great attention, and while the rulings of this court upon the many questions involved are very important to the parties, they present no new matters of law for discussion; and as similar questions have time and again been passed upon in the previous decisions of this court, we have not deemed it wise or needful to give our views at length upon the various points submitted for our consideration.

Upon the whole record, the judgment of the district court will be affirmed.

All the Justices concurring.