### STONE v. CHICAGO, M. & ST. P. RY. CO.

1. To entitle a party to a continuance of a cause, on account of the absence of witnesses, the affidavit to support the application must show that the evidence of the witness will be material; that due diligence has been exercised in the endeavor to procure it; and must contain an assurance of the probable attendance of the witnesses, or procurement of their testimony, at the time proposed.

2. In an action of conversion, even if the defendant be guilty, he has the right to show that the plaintiff has not been damnified by the act of conversion, or that his damages were merely nominal.

3. The owner of property that has been converted by another can only recover as compensation an amount in damages commensurate with his actual loss, and any facts which, if established by proof, will go towards a mitigation of damages, are competent evidence on the trial.

(Syllabus by the Court. Opinion filed Oct. 15, 1892.)

Appeal from circuit court, Turner county. Hon. D. HANEY, Judge.

Action of trover to recover the value of certain personal property. Plaintiff had judgment. Defendant appeals. Reversed.

The facts are stated in the opinion.

*Winsor & Kittredge*, for appellant.

Novation is a substitution of a new obligation for an existing one. Section 3487, Comp. Laws; Guichard v. Brand, 15 N. W. 764; Glover v. Dowagiae, 12 N. W. 867. In a suit for conversion, if plaintiffs have received their damages or the amount of their interest in the property from any person connected with the transaction they can only recover their actual loss. Jelletts v. Railroad, 15 N. W. 237; Squire v. Hollenbeck, 9 Pick. 551; Chamberlain v. Shaw, 18 Pick. 283; Pierce v. Benjamin, 14 Pick. 361; Kaley v. Shed, 10 Met. 319; Bates v. Courtwright, 36 Ill. 518; Ball v. Liney, 48 N. Y. 6; 1 Wood's C. C. 131.

*L. B. French*, for respondent.

A continuance is properly refused where there is no showing of diligence. Clerk v. Dekker, 23 Pac. 956; Railroad v. Styron, 1 S. W. 161; Blair v. Railroad, *Id.* 352; Salmon v. Norton, 11 Pac. 108; Davis v. Read, 11 S. W. 558; City v. Dykman, 17 N. E. 587; Rowland v. Shephard, 43 N. W. 344; Northwestern Aid v. Prune, 16 N. E. 98. An affidavit for a continuance must show that the witness is a material one and that his deposition could not be obtained. Grounds v. Ingram, 12 S. W. 1118.

The defendant having delivered the property to third persons without any order from the owner is liable for the full value of the property. Redfield, Carrier, § 318; Crane v. Rinby, 10 Gray, 88; August v. Paper, 1 Gray, 621; Brown v. Haynes, 52 Me. 578; McMichael v. Morton, 13 Pa. 215; Sedg. Dam. 482. Any delivery of freight not in accordance with the terms of the bill of lading is a conversion. Railroad v. Stern, 12 Atl. 756; Bank v. Railroad, 7

N. E. 126; Dows v. Bank, 91 N. S. 618; View v. Steamship, 50 N. Y. 24; Bank v. Jones, 4 N. Y. 497; Freeman v. Railroad, 106 N. Y. 579; Wernway v. Railroad, 117 Pa. St. 46; Altman v. Railroad, 115 Mass. 233; Newcomb v. Railroad *Id.*, 230; Bank v. Crocker, 111 Mass. 164; Forbes v. Railroad, 9 A. & E. R. R. 61; Wacker v. Railroad, *Id.* 251. It is not necessary to show a demand and refusal in order to maintain action, where there has been a conversation by wrong delivery. Boyce v. Brockway, 31 N. Y. 493; Claften v. Railroad, 7 Allen, 345.

BENNETT, P. J. October 24, 1884, one D. A. Temple shipped from Freeman, territory of Dakota, a carload of cattle by the Chicago, Milwaukee & St. Paul Railway, consigned to D. A. Temple, St. Paul, Minn., care of Pierce Bros., Minnesota Transfer. A bill of lading was given by the railroad company, in which said D. A. Temple was named as consignee, to order of George W. Stone & Co., of Parker, Dak. This bill of lading was delivered by the railroad company to George W. Stone & Co., who drew a draft for $563 on Pierce Bros., to whose care the cattle were shipped, attached the bill of lading to it, and forwarded it by mail for collection to the First National Bank of St. Paul. The draft was returned protested for nonpayment. In the meantime the railroad company delivered the cattle to Pierce Bros. without the consent or order of George W. Stone & Co., who held the bill of lading. Subsequently the firm of George W. Stone & Co. was dissolved, and the bill of lading was duly transferred to George W. Stone, who brought this action of conversion against the railroad company to recover the value of the cattle. In defense to this action the railroad company alleges—First, that said Pierce Bros. paid said George W. Stone & Co. in full for said cattle; second, that D. A. Temple shipped at about the same time two carloads of sheep and this carload of cattle, and drew drafts on the same for $570 and $563, respectively; that said drafts represented, respectively, the value of the sheep and the cattle; that said drafts were presented to Pierce Bros., who paid one of said drafts, and received the cattle therefor, and refused to pay the other, because, as alleged, the sheep had been condemned as scabby, and that they were returned to George W. Stone & Co.

The issue thus made was called for .trial on the 17th day of September, 1890. The defendant then applied for a continuance, based upon the affidavit of one of defendant's attorneys, on the ground of the absence of material witnesses. This motion was overruled by the court, and this order is assigned as one of the errors in the trial. To properly consider the assignment, it will be necessary to substantially set out the contents of the affidavit upon which the motion was made. The affidavit states: "That Frank Pierce and his brother, of the city of St. Paul, Minn., and J. P. Temple, of Morristown, Minn., are necessary and material witnesses for defendant, and that without their testimony defendant cannot safely proceed to trial. That the said Frank Pierce and ——— Pierce will swear that about the 23d day of October, 1884, one D. A. Temple shipped two carloads of sheep over defendant's railroad from Freeman, D. T., to Minnesota Transfer, Minn., to them, and drew draft against said shipment, payable to order of G. W. Stone & Co., for either $570.00 or $450.00 (affiant does not know which,) on said Pierce Bros. That on the 26th day of October, 1884, the said Temple shipped the cattle in question in this suit from said Freeman to said Pierce Bros., and drew a draft to the order of G. W. Stone & Co. for $563.00 on Pierce Bros. That the two shipments arrived at Minnesota Transfer together, and that Pierce Bros. paid the draft against the sheep shipment, but, before paying the draft against the cattle, were notified by the inspector at Minnesota Transfer that the sheep were scabby. That they then refused to pay the cattle draft, and applied the amount of draft already paid against the cattle. That D. A. Temple was then in charge of both shipments, and that he took charge of the sheep they refused to receive. That George W. Stone, or George W. Stone & Co., have never made any claim against them, or brought any suit or proceedings in reference to said cattle. That J. P. Temple will swear that within a day or two after that, about the 1st of November, D. A. Temple brought two carloads of sheep from Minnesota Transfer to him at Morristown, Minn., and took receipt from him in the name of George W. Stone & Co., and that George W. Stone continually wrote to him about said sheep, as appears by letters, copies of which are hereto attached, and that all

of said letters were received by him by due course of mail, postmarked at Parker, D. T., and that many of them were replies to letters written by him to George W. Stone & Co., at that place. Affiant further says that quite a while since, and affiant thinks in the winter of 1889 and 1890, Mr. Kennedy, who was plaintiff's attorney, and himself, had a conversation in which it was agreed that they would go to St. Paul, and take the depositions of these witnesses; that before the time agreed upon, Mr. Kennedy informed deponent he could not then go; that deponent served notice of taking depositions afterwards on him, but, before the time set, he informed deponent he could not go then, and asked him to let it go until some convenient time; that during the month of June, 1890, and at Sioux Falls, Mr. Kennedy and the deponent had another conversation, in which Mr. Kennedy informed deponent (as deponent thinks he had done before) that he was going to step out of the case, and that he would have other attorneys take his place, and it was then and there understood and agreed that no further steps should be taken in the case until other attorneys should be brought in; that the first notice affiant ever had of any other attorney being in the case was on Saturday, the 7th day of September, when his law partner, Mr. Kittredge, returned from Parker, when he was informed that Mr. French was in the case, and that plaintiff expected to try it. Then, on the opening of court last Tuesday, he, affiant, informed the court and Mr. French that, unless an agreement in reference to testimony could be made, he could not try the case this term. That afterwards, and on the same day, in Mr. Theilman's office, he had a conversation with Mr. French to the same effect, and he and Mr. French said they thought they could agree, but have been unable so to do. That D. A. Temple, from what affiant now learns for the first time, will be a necessary and material witness, and will swear that the sheep turned over to J. P. Temple by him for Stone & Co. are the same sheep against which the draft above referred (to) was drawn. That his present whereabouts is unknown to affiant, but he can find it out from his brother, J. P. Temple. That if said cause is continued, affiant will have either the personal attendance or the depositions of all of said witnesses at the next term of this court. Affiant further

states that, for nearly, if not quite, two months prior to the term of this court, Mr. Kennedy was absent from the state, and affiant could not have served notices of taking depositions if he had desired. Affiant further states that he sent a written stipulation in reference to the matters referred to before in his affidavit, to E. C. Kennedy, at Parker, some time in the fall of 1889, and that he wrote said Kennedy about taking said depositions, or stipulating in reference to them; that said Kennedy replied that he thought they would do so when he could consult Mr. Stone, but has never done anything further in regard to it, and deponent has waited to hear from him; that said proposed stipulation and deponent's letter are in writing, and in plaintiff's possession."

It has been very conclusively settled that to entitle a party to a continuance of a cause, when duly called for trial, on account of the absence of witnesses, the affidavit to support the application must state: (1) That the evidence of such witnesses will relate to the merits of the case, and is material. Oil Works v. Brown, 7 Abb. Pr. (N. S.) 382; People v. Vermilyea, 7 Cow. 369; Sellars v. Kelly, 45 Miss. 323; Bank v. Chester, 55 Cal. 49; Green v. King, 17 Fla. 452; Hubbard v. State, 7 Ind. 160; Steele v. People, 45 Ill. 153. (2) That due diligence has already been exercised in the endeavor to procure it. Conner v. Sampson, 22 Tex. 20; State v. Underwood, 76 Mo. 630; Wolcott v. Mack, 53 Ind. 269; Lillienthal v. Anderson, 1 Idaho, 673; Moon v. Helfer, 25 Kan. 139; Ingalls v. Noble, 14 Neb. 272, 15 N. W. Rep. 351. (3) An assurance of the probable presence of the witnesses, or that their testimony can be procured, at the time proposed. Brown v. Moran, 65 How. Pr. 349; Deming v. Patterson, 10 Ind. 251; State v. Tilghman, 6 Iowa, 496; Polin v. State, 14 Neb. 540, 16 N. W. Rep. 898; Lee v. Quirk, 20 Ill. 392.

As to the materiality of the testimony of the absent witnesses. The affidavit states specifically what is expected to be proved by the witnesses, the Temples and Pierce Bros. That Pierce Bros. will swear that D. A. Temple shipped two carloads of sheep to them October 24, 1884, and drew a draft on said Pierce Bros. against said shipment, payable to the order of George W. Stone & Co. for either $570 or $450. That on the 26th of October, 1884, D. A. Temple shipped the cattle in controversy to Pierce

Bros., and drew a draft for $563, payable to the order of George W. Stone & Co. on Pierce Bros., both of these shipments arriving on the same day. That Pierce Bros. paid the draft against the sheep shipment, but, before paying the draft against the cattle shipment, they were notified by the inspector that the sheep were scabby. They then refused to pay the cattle draft, but applied the amount of the draft already paid against the sheep shipment in payment of the cattle, and refused to receive the sheep, which were taken charge of by D. A. Temple the agent of the plaintiff. The affidavit further states that Pierce Bros. will swear that George W. Stone & Co. have never made any claim against them for nonpayment of the protested draft. The affidavit further states that J. P. Temple will swear that D. A. Temple brought two carloads of sheep to him from Minnesota Transfer, at Morristown, and took a receipt from him in the name of George W. Stone & Co., and that George W. Stone continuously wrote to him about said sheep, and claimed and exercised ownership over them. The complaint is one in trover, based upon the alleged wrongful turning over of a carload of cattle to a party who was not the consignee, and who did not hold the order for them from the consignee. The answer alleges that the plaintiff has been paid in full for the cattle. It also alleges the same facts as set up in the affidavit in relation to the shipment of cattle and sheep; of the payment of the sheep draft; of the condemnation of the sheep; of the return of the sheep to D. A. Temple as the agent of George W. Stone & Co.; of the application of the money paid on the sheep draft to the payment of the cattle draft. If these alleged facts were true, and could have been proven by these witnesses, they became material in the trial of the issues raised by the pleadings. Even if the defendant was guilty of conversion, yet it had the right to show that the plaintiff had not been damnified by the act of conversion, or that his damages were merely nominal. The owner of property that has been converted by another can only recover as compensation an amount in damages commensurate with his actual loss; and any facts which, if established by proof, will go towards a mitigation of damages, are competent evidence in a trial of an action of trover or conversion. Cook v.

Loomis, 26 Conn. 483; Chamberlin v. Shaw, 18 Pick. 278; Brewster v. Silliman, 38 N. Y. 423; Reynolds v. Shuler, 5 Cow. 323. Thus the fact that plaintiff did receive a large sum of money in payment of the cattle draft, and received in return the sheep, which were declared to be unsalable by competent authority, and that he exercised ownership and control over them after such reception, was all competent evidence, at least in mitigation of damages that might have resulted by the act of conversion, if any there was, by the defendant.

The evidence of the absent witnesses being material, do the facts alleged in the affidavit show that due diligence had been exercised in obtaining the witnesses? The record shows that the case has been pending for several years; that E. C. Kennedy, Esq., was the attorney for the plaintiff in bringing the suit; that some time during the winter of 1889 or 1890, the attorneys for plaintiff and defendant had a conversation in which it was agreed that they would go to St. Paul, where these witnesses resided, and take their depositions; that at the time agreed upon, Mr. Kennedy, the attorney for plaintiff, could not go; that notice was afterwards served upon him that depositions would be taken; that the attorney for plaintiff again came to the attorney for defendant, saying he could not go at the time specified in the notice, and asking that the matter be deferred until June, 1890. At that time the attorneys had a further conversation about the matter, and the attorney for the plaintiff said he was going to step out of the case, and that other attorneys would take his place, and it was then agreed between them that no further steps should be taken until another attorney should be substituted. No notice of substitution was ever served upon, or any other notice given, the attorney for the defendant, until Saturday, the 7th day of September,—about three days before the case was called. At that time the defendant informed the court and the attorney for the plaintiff that he could not try the case at that term of court unless an agreement as to some of the facts could be entered into. No agreement was effected. We think, under the circumstances as detailed, due diligence has been exercised by the defendant in procuring the evidence desired, and that further and ample time should have been given it to procure

22—S. D.

the witnesses or their testimony. The affidavit also shows that the witnesses, or their depositions, could have been procured at the time designated, had a continuance been granted We are willing to concede that the propriety of continuing a cause rests very largely in the discretion of the trial court, and that its judgment should not be reversed, either continuing or refusing to continue a cause, unless it very clearly appears that the court's discretion has been erroneously exercised; but in the case at bar we think all the circumstances surrounding it, its long continuance on the calendar, the change of attorneys, and other matters appearing in the record, demand that the defendant should have the benefit of the doubt, and time to obtain and produce all the evidence it may have by way of defense. We therefore hold that the court below erred in overruling the defendant's motion for a continuance, and the judgment is reversed and set aside, and the cause remanded for a new trial. All the judges concur.