CHICAGO, BURLINGTON & QUINCY RAILROAD COM-
PANY, Respondent v. WHEATON, Appellant

(80 N.W.2d 868)

(File No. 9568. Opinion filed February 11, 1957)

**John E. Goodrich, Ken C. Graves,** Rapid City, for Defendant and Appellant.

**Hanley & Costello,** Rapid City, for Plaintiff and Respondent.

PENFOLD, Circuit Judge. This is an appeal from a judgment of the Circuit Court of Pennington County, South Dakota, which judgment granted the respondent an injunction against the appellant, his agents, attorneys, and servants and also granted the respondent a money judgment against the appellant in the sum of $1,628.52.

The facts are as follows: Respondent, Chicago, Burlington, and Quincy Railroad, owns a right of way 100 feet wide, together with grade and trackage thereon. This right of way traverses, abuts, or adjoins lands owned by appellant.

The area in question in this litigation is a segment of the right of way running from a survey point on the track line designated by the respondent as Station 880 to Station 883 plus 50 which involves a distance of some 350 feet. The land adjoining and to the east of this portion of the right of way is a portion of the appellant's land.

South of Station 880 Spring Creek runs, mostly on respondent's right of way, in a rock cut. At station 880 the original channel swings to the east away from the railroad grade and follows the foot of a hill so that at about Station 882 plus 50 the old channel is some 250 feet east of the railroad grade.

In the spring of 1951 appellant built a dam abutting on the railroad grade at about Station 882 plus 50, said dam running east to close the creek channel and abutting its east end against the hill to the east. The highest part of the dam was at the east end in the original creek channel and the lowest part was an unprotected earthen spillway at the west end where the dam abuts the railroad grade and across the east boundary line of the right of way and into the right of way.

A lake was formed with the railroad grade being the western retaining wall. Water backed up to about Station 880 to the south from which direction Spring Creek flows.

After the lake filled the ordinary flow of the creek was diverted over the west end spillway of the dam. Water in the lake crossed into the railroad's right of way and rose to a level of several feet on the embankment. The water soaked the grade and had a deteriorating effect and weakened the grade, causing a hazard to the track. At these points involved the grade is loose rock and earth fill.

About May 22, 1952, Spring Creek flooded and the high water went over the dam spillway, washed it out, drained the lake, and scoured out a new channel along and on the right of way of the railroad between Station 880 and Station 883 plus 50. The old channel remained closed by the dam and the old channel at Station 880 became silted and the present flow of the creek follows the new channel through the washed out spillway at the west end of the dam and along and on the railroad right of way.

No flooding or water damage at this point had ever occurred since the construction of the railroad and the creek, prior to the building of appellant's dam, had followed the old channel.

Action of the water sucking out of the lake and washing over the spillway and against the railroad grade approximately between Stations 880 and 883 plus 50 washed away the spillway, the west end of the dam, and a substantial portion of the railroad grade between such stations.

To make the tracks safe for use and to repair the damage, respondent strengthened the same by pouring

into and onto the grade 180 yards of heavy rock for riprap purposes and 580 yards of dirt for backfill, using train repair crews at a claimed cost of $1,628.52 for such labor and material.

The record shows that appellant was never given permission of any kind by the railroad company to build this lake, dam, or spillway against the railroad grade or divert the flow of the creek or change the channel or to encroach on the railroad right of way in any respect.

Respondent sought an injunction and damage recovery for $1,628.52 and interest and costs against the appellant and appropriate judgment for injunction and damages in that sum was entered March 7, 1955.

In this appeal appellant does not by any proper assignment of error or by any argument contained in his brief seek a review of that part of the judgment granting respondent an injunction against appellant so, consequently, that portion of the judgment will remain as ordered by the trial court.

The only question to consider, therefore, is whether or not the trial court erred in allowing damages to the respondent and against the appellant in the sum of $1,628.52, plus interest and costs. Neither appellant nor any one else disputes the proved fact of damage to respondent. That fact is admitted by everyone.

The position of appellant appears to be that the dollar amount of such damage is hearsay as to him and not established sufficiently to support such judgment. Briefly, the evidence of damage submitted by respondent is as follows: the witness Gillespie, respondent's engineer in charge of the area in question, was present from time to time during the repair work period, personally sent the rock and dirt to the site by railroad crew, was familiar with rock and amount placed in repair, and that this work was essential to the repair of the damage.

The witness Wolcott, Roadmaster for respondent, was in actual charge of repair work; it was essential; that the washout made the grade dangerous; that repair work was done between Stations 880 and 883 plus 50; that heavy rock riprap was dumped at the base of the toe of the fill and

then backfilled with dirt; that he had a work train and crew on the site to make repair; that 180 yards of rock and 580 yards of dirt were used; that in line with his duties he kept a record of the material, work and labor and reported it to the Division Office of respondent; that such was the routine method of handling the record in such case; that he examined the cost computation made by the Division Office; that he was present during all the work and witnessed each and every load of material dumped into the repair job.

The witness Julius, Chief Maintenance Clerk for this division of the railroad at the time of the repair work, and whose specific duty it was to make cost computations in this manner, testified that he supervised the cost accounting, knew of these repairs, and had received the material quantities and labor costs from Wolcott; that he computed the costs and knew that they were based on data received from Wolcott; that it was his duty to keep the records of purchase of rock and riprap, costs on building such grades and repairing same, and putting rock and dirt into grades, and the cost of labor; that he made such computations in this instance, had been doing such work for 17 to 18 years, and that the costs of this repair to the respondent were $1,628.52.

Appellant offered no evidence whatsoever respecting amount of damage and, indeed, utterly failed to cross-examine these witnesses as to the damage element.

Appellant's defense consists of a claim that respondent should have, upon becoming aware of the existence of the dam, done or performed some act or taken some action to mitigate the damages which later occurred. This position seems to us to be entirely without merit.

The law does not require a person to take affirmative legal action to prevent another from suffering the result of his tortious act. It would seem to us that the duty to take the ambiguous action that appellant claims respondent should have taken would primarily lie with appellant whose continuous trespass was the underlying cause of the injury to respondent's property.

The rule of mitigation of damages is stated fairly as follows and cited with approval in 15 Am.Jur., Damages, note 12 at page 422:

"Where one has rendered the consequences of the wrongful act complained of more severe or injurious by some voluntary act which it was such person's duty to refrain from, or if by neglect the person has failed to exert himself reasonably to eliminate the injury and prevent the damages and has thereby suffered some additional injury, he cannot recover such damages as are to be attributed to such acts or omissions. Lesh v. Illinois Steel Co. 163 Wis. 124, 157 N.W. 539, L.R.A. 1916E, 105."

This rule does not require respondent to anticipate the injury before it occurs but rather relates to an act or omission relating to the injury after it occurs.

Hence, respondent cannot be held to have failed to mitigate the damages in this case because he didn't apply for injunctive relief prior to the time of injury.

 The trial court heard the evidence and has made its findings and the same will not be disturbed on appeal unless the findings on appeal are clearly against the preponderance of the evidence.

 It is not the function of appellate court to put itself in the position of the trial court to determine the credibility of witnesses and the weight to be attached to their testimony for the purpose of determining whether it would have made the same or similar fact determination. It was for the trial court to accept as true or reject as untrue the testimony given, and the appellate court will not disturb its findings unless the evidence clearly preponderates against them. Houck v. Hult, 63 S.D. 290, 258 N.W. 142; also Bogue v. Clay County, 75 S.D. 140, 60 N.W.2d 218. These cases follow a long line of decisions in South Dakota to the same effect.

 We will not disturb the findings herein.

An examination of all assignments discloses no error. A further discussion of any other matters is unnecessary.

The Judgment is affirmed.

All the Judges concur.

PENFOLD, Circuit Judge, sitting for HANSON, J., disqualified.