**SECURITY STATE BANK, a corporation, now known as Farmers and Merchants Bank, Doland, South Dakota, Plaintiff and Appellant,**

v.

**Stuart BENNING, Doyle Harms, Lyle Levtzow and Gayle Levtzow, dba Levtzow Bros., Defendants, Third–Party Plaintiffs, Appellees and Cross–Appellants.**

v.

**Dennis L. LAU, Third–Party Defendant.**

**Nos. 15996, 16001.**

Supreme Court of South Dakota.

Argued May 24, 1988.

Decided Dec. 7, 1988.

Douglas E. Kludt of Churchill, Manolis, Freeman and Kludt, Huron, for plaintiff and appellant.

Gale E. Fisher of Fisher & Hughes, Sioux Falls, for appellees and cross-appellants.

MORGAN, Justice.

These consolidated actions were commenced by Security State Bank (Bank) against Stuart Benning, Doyle Harms and Lyle and Gayle Levtzow, dba Levtzow Brothers (Buyers), to recover the value of corn sold to Buyers by Dennis Lau (Lau), which corn was subject to a security inter-

est held by Bank. On motion by Bank,[1] the trial court granted partial summary judgment to Bank on the issue of conversion, but left for jury determination the amount of damages to which Bank was entitled. The jury returned a verdict awarding no damages as to each of Buyers. Bank appeals from the judgment entered on that verdict. Buyers filed notice of review. We affirm.

Bank, which had begun a business relationship with Lau[2] in the 1970's, made various loans to Lau between 1977 and 1984. As security, Bank took a security interest in various property owned by Lau, including yearly crop production. A new security agreement was executed each year. The security agreement in question contained the following provision:

> Borrower will not sell, transfer, lease, or otherwise dispose of the collateral, or attempt or offer to do any of the foregoing, without the prior written consent of the Bank, and unless the proceeds of any such sale, transfer, lease, or other disposition are paid directly to the Bank. No provision contained in this agreement shall be construed to authorize any such sale, transfer, lease or other disposition of the collateral except on the conditions contained in this paragraph.

It is undisputed that during the period between January and June, 1983, Lau made various sales to Buyers from corn in his possession that was subject to Bank's perfected security interest. Buyers had no actual notice of Bank's security interest. Lau received checks in payment in full made out to himself for each of the sales and never submitted the proceeds to Bank, although some of the checks were deposited to his account with Bank. On May 26, 1983, Bank discovered that Lau was selling Buyers corn which was subject to Bank's security interest. That same day, Bank sent letters to Buyers advising them of its lien and instructing them to remit checks payable jointly to Lau and Bank in payment for the corn. When Buyers failed to remit, Bank commenced these separate conversion actions which were later consolidated for trial in Spink County, South Dakota.

On appeal, Bank raises two issues: (1) that the trial court erred in instructing the jury that Bank had a duty to mitigate its damages; and (2) that if it had such a duty, the evidence was insufficient to sustain the jury verdict that it had not mitigated its damage. By their notice of review, Buyers raise the issue that the trial court erred in not granting summary judgment for the reason that Bank had waived its security interest in the collateral by express consent to the sale of the collateral. By reason of our disposition of Bank's issues, we need not address Buyers' notice of review issue.

Basically, the first issue raised by Bank is: Did the Bank have a duty to mitigate its damages?[3] In arguing against the requirement for mitigation, Bank's argument is threefold.

Initially, Bank argues that the statutory measure of damages, as found in SDCL 21–3–3, rules out mitigation. That statute provides:

> The detriment caused by the wrongful conversion of personal property is presumed to be:
>
> (1) The value of the property at the time of the conversion, with the interest from that time;
>
> (2) Where the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest, at the option of the injured party;
>
> (3) A fair compensation for the time and money properly expended in pursuit of the property.
>
> Such presumptions cannot be repelled in favor of one whose possession was wrongful from the beginning by his sub-

---

1. Buyers also moved the trial court for summary judgment, which motion was denied.

2. Lau was engaged in both farming and commercial trucking.

3. In settling instructions, counsel for Bank objected to Instruction No. 11, on mitigation, based upon his prior motion for directed verdict which contended Buyers were not entitled to a mitigation defense. Bank made no objection to the court's phrasing of the mitigation defense.

sequent application of the property to the benefit of the owner, without his consent.

Bank contends that the last sentence of the above statute precludes the requirement for mitigation, citing us to *Shaffner v. Price*, 63 S.D. 456, 260 N.W. 703 (S.D.1935). In *Shaffner*, this court held that a sheriff, who was guilty of conversion of a combine [4] could not escape liability for the value of the combine by reason of the application of part of the proceeds of the sale to plaintiff's debt *without plaintiff's consent.* Bank points out that it had not consented to any form of mitigation.

Buyers, on the other hand, point out that SDCL 21–3–3 only creates a presumption of the amount of damage flowing from a conversion. As this court has stated in *Headlee v. New York Life Ins. Co.*, 69 S.D. 499, 505–06, 12 N.W.2d 313, 316 (1943):

'A presumption is not evidence of anything, and only relates to a rule of law as to which party shall first go forward and produce evidence sustaining a matter in issue. A presumption will serve as and in the place of evidence in favor of one party or the other until prima facie evidence has been adduced by the opposite party; but the presumption should never be placed in the scale to be weighed as evidence. The presumption, when the opposite party has produced prima facie evidence, has spent its force and served its purpose, and the party then, in whose favor the presumption operated, must meet his opponent's prima facie evidence with evidence, and not presumptions. A presumption is not evidence of a fact, but purely a conclusion.' (Citation omitted.)

. . . .

' * * * the peculiar effect of a presumption "of law" (that is, the real presumption) is merely to invoke a rule of law compelling the jury to reach the conclusion in the absence of evidence to the contrary from the opponent. If the opponent does offer evidence to the contrary (sufficient to satisfy the judge's requirement of some evidence), the presumption disappears as a rule of law, and the case is in the jury's hands free from any rule[.] ...' (Citation omitted.)

*See also McKiver v. Theo. Hamm Brewing Co.*, 67 S.D. 613, 297 N.W. 445 (1941); *Honrath v. New York Life Ins. Co.*, 65 S.D. 480, 275 N.W. 258 (1937). Buyers argue that if the legislature had intended anything other than an ordinary presumption it would have said so by terming it a conclusive presumption. It did not choose to do so however, so we should not enlarge the statute. *American Rim & Brake, Inc. v. Zoellner*, 382 N.W.2d 421 (S.D.1986).

For its second argument, Bank cites us to *Chicago, Burlington & Quincy Railroad Co. v. Wheaton*, 76 S.D. 467, 80 N.W. 2d 868 (1957) (C.B. & Q.), for the proposition that a duty to mitigate damages does not exist in cases of continuous and intentional torts involving property. In that case, the railroad sought damages for the washout of a roadbed caused by flooding occasioned by defendant's dam. Defendant sought to avoid liability by arguing that the railroad should have sought an injunction against maintenance of the dam when it was first aware of its existence. We held that railroad could not be held to have failed to mitigate because application was not made for injunctive relief prior to the time of injury.

More recently, in *Stadheim v. Becking*, 290 N.W.2d 273 (S.D.1980), another flooding case involving plugging of a drainage ditch, we reiterated our holding in the *C.B. & Q.* decision, stating that plaintiffs were excused from taking *affirmative legal action* to mitigate their damages under the circumstances of the case. It is Bank's contention that these decisions are authority for the proposition that upon discovery of the conversions Bank was not required to foreclose its junior mortgages on real estate and its security interests in all other

---

**4.** This was a claim and delivery action to secure possession of a mortgaged combine after mortgagors had defaulted. Apparently no other security was involved. Failure of the sheriff to file a return of his proceedings in a claim and delivery action, within twenty days per applicable statute and prior holdings of this court, rendered the sheriff a trespasser ab initio, thereby rendering the taking of the combine by the sheriff wrongful from the beginning.

property owned by Lau. Instead, it was within its authority to liquidate its security in the manner in which it did.

Buyers also cite from *C.B. & Q.*:

The rule of mitigation of damages is stated fairly as follows and cited with approval in 15 Am.Jur., Damages, note 12 at page 422:

'Where one has rendered the consequences of the wrongful act complained of more severe or injurious by some voluntary act which it was such person's duty to refrain from, or if by neglect the person has failed to exert himself reasonably to eliminate the injury and prevent the damages and has thereby suffered some additional injury, he cannot recover such damages as are to be attributed to such acts or omissions. (Citation omitted.)

*This rule does not require respondent to anticipate the injury before it occurs but rather relates to an act or omission relating to the injury after it occurs.* (Emphasis added)

76 S.D. at 471–72, 80 N.W.2d at 871.

Buyers summarize the rule as "not requir[ing] a plaintiff to anticipate the commission of a tort and injury or damage, but if by his own lack of reasonable care he sustains additional or enhanced damages, he cannot recover for those."

Finally, Bank relies on 22 Am.Jur.2d *Damages* § 547 (1988) for the proposition that the Rule of Avoidable Consequences should not apply in cases of intentional or positive and continuous torts, and on Restatement (Second) of Torts § 223 (1965), for the proposition that conversion is always an intentional tort.

Buyers cite us to Restatement (Second) of Torts § 918 (1979), for the contrary holding. Therein it is stated:

(1) Except as stated in subsection (2), one injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort.

(2) One is not prevented from recovering damages for a particular harm resulting from a tort if the tort-feasor intended the harm or was aware of it and was recklessly disregardful of it, unless the injured person with knowledge of the danger of the harm intentionally or heedlessly failed to protect his own interests.

The illustrations under Comment "a" demonstrate that this rule was intended to cover intentional as well as unintentional torts.

■ Under the facts of this case, we find Buyers' arguments more persuasive. SDCL 21-3-3 raises only a presumption. The last paragraph of the statute is not even applicable under this scenario. *Shaffner, supra,* is inapplicable. The corn sold in this case does not constitute the entire security held by Bank as did the combine in *Shaffner.* Buyers did not undertake to apply any of the proceeds of the corn to the benefit of Bank. On the contrary, it appears from the record that Bank did indeed credit the respective buyers for any payment checks that were deposited to Lau's account with Bank, regardless of the fact that Lau did not subsequently apply them to Bank's indebtedness. To that extent, Bank indeed mitigated its damage. In any event, the presumption upon which Bank relied was apparently met by sufficient prima facie evidence to satisfy the trial court's requirement of some evidence, so that a jury question arose as to the issue of mitigation.

Secondly, we find the *C.B. & Q.* case, as well as *Stadheim, supra,* inappropriate in this case inasmuch as it is Buyers' argument that Bank did not take appropriate action *after* Lau's default, as opposed to prior to default.

Finally, it does not appear to us that the authority in Restatement (Second) of Torts mandates preclusion of the Rule of Avoidable Consequences given the fact situation developed in this case. We affirm the trial court's instruction on mitigation.

■ The second issue raised by Bank is the sufficiency of the evidence to support the verdict. Perhaps, in light of the zero verdict, the issue could better be posed as whether there was sufficient evidence to sustain Bank's failure to mitigate? Bank urges that the reduction of Lau's debt from

$185,000 or $190,000, at the time of the conversions, to $92,215.40 after all other liquidation was had, evidenced that Bank had done all that was reasonably possible to limit their damages. The issue was presented to the jury in Instruction No. 11:

> The Defendants have the burden of proving the following issues:
>
> (1) That the Plaintiff's advancing of loan funds to Dennis Lau after the Bank learned of Lau's default was a contributing cause of it's loss.
>
> (2) That the Plaintiff's voluntary payment of claims of judgment creditors ahead of it's [third] mortgage was a contributing cause of it's loss; and
>
> (3) That the Plaintiff's failure to exercise it's right to offset funds from Dennis Lau's checking account was a contributing cause of it's loss.

This instruction defined the categories where Buyers had introduced evidence of transactions between Bank and Lau, occurring after the default, alleged to have contributed to Lau's debt to Bank.

We first note our scope of review of this issue on appeal. In *Olesen v. Snyder*, 277 N.W.2d 729, 736 (S.D.1979), where plaintiff appealed an adverse verdict on the grounds of sufficiency of the evidence to justify a jury verdict for defendants and alleged that the verdict was contrary to the facts and the law of the case, we said:

> Upon our review of the sufficiency of the evidence on appeal, we consider the evidence and the inferences therefrom in the light most favorable to upholding the verdict. (Citation omitted.) We will also consider plaintiff's evidence only insofar as it tends to amplify, clarify, or explain evidence in support of the jury verdict. (Citation omitted.) If, when so viewed, there is competent and substantial evidence to support the verdict, then it must stand. (Citation omitted.)

The evidence on the first category was that Bank had advanced Lau money to fix up his machinery for a farm sale, loaned him money to pay custom harvesting expenses and farm expenses and covered his overdrafts. Bank argues that these advancements were "reasonable" because

Lau then cooperated in having a farm sale, rather than requiring a foreclosure sale which would have brought less money, that the custom harvesting brought in some profit and the payment of farm expenses permitted Lau to qualify for some farm programs and bring in program payments. Finally, covering his overdrafts kept Lau out of jail and "cooperative."

The evidence relating to the second category, the sale of Lau's farm, is confusing. The record indicates that a sale was made in four parcels for the total sum of $762,000. Apparently the contracts for sale and the warranty deeds to effect the sale were all placed in escrow with the F & M Bank. The record further indicates that the first and second mortgage holders were owed approximately $532,000 on their liens. Bank had a third mortgage which it apparently decided not to foreclose. From the downpayment of some $122,000, $39,500 was paid out to judgment creditors, inferior to Bank's third mortgage and another $28,000 was paid to or on behalf of Lau to free up a combine to use in custom harvesting.

Buyers complain about this arrangement. It appears that there is an equity of some $230,000 in the contracts. Bank does not demonstrate any claim or lien against that sum, if and when it becomes available. Bank's officers merely testified that in their opinion the foreclosure of the third mortgage was not a viable option. Further, that because of the land market conditions, the contracts were probably not going to be completed.

As to the third category, bank account offsets, Bank alleges that it did offset some $115,847 from Lau's account over a period of time. They argued that more was not offset so that Lau could stay in business. Bank argues that "[t]here can be no question that the Bank exercised reasonable care in handling the Dennis Lau account. In each instance, the Bank used reasonable business judgment in making decisions regarding whether to advance monies to Dennis Lau or whether to off-set funds in Mr. Lau's accounts."

We determine that whether or not Bank used reasonable or good business judgment

is the issue that was before the jury, and properly so. We cannot say that it was so, as a matter of law, particularly with respect to the land sale transaction. The entire matter was presented to the jury with the respective arguments of the parties. There does appear to be substantial evidence in the record to support the jury's verdict and, accordingly, we affirm the judgment entered thereon.

All the Justices concur.