KONENKAMP, Justice
(dissenting on Issue 3).
[¶ 73.] The Court first argues that the mitigation defense does not apply here because there is no duty to mitigate when there is a single ongoing, continuous conversion, as the victim is not required to anticipate an injury. Then it argues that the mitigation defense does not apply to a series of individual conversions, because the previous conversions do not trigger a duty to mitigate the subsequent conversions. When, then, is there a duty to mitigate damages in a conversion case? Clearly, this Court has applied the mitigation of damages defense to conversion actions. As early as 1892, this Court held that the victim of a conversion was limited to recoverable damages “commensurate with his actual loss; and any facts which, if established by proof, will go towards a mitigation of damages, are competent evidence in a trial of an action of trover or conversion.” See Stone v. Chicago, M. & St. P. Ry. Co., 3 S.D. 330, 53 N.W. 189 (1892) (citations omitted). Moreover, this Court has clearly held that SDCL 21-3-3 allows for the mitigation defense. In Security State Bank v. Benning, the Bank argued that SDCL 21-3-3 “rules out mitigation.” 433 N.W.2d 232, 233 (S.D.1988). But we wrote that the Legislature did not specifically rule out mitigation in the statute, and, therefore, we would “not enlarge the statute.” Id. at 234. Thus, the Court unduly constrains the doctrine in conversion actions.
[¶ 74.] The duty to mitigate damages arises when an injured party “has knowledge of the danger or harm and intentionally or heedlessly fails to protect its own *409 interests.” Id. at 285 (citing Restatement (Second) Torts, § 918(2) (1979)). Here, WestCon was tortiously injured each time grain was stolen. Therefore, the focus must be on whether, after WestCon suspected it was losing grain through conversion, it intentionally or heedlessly failed to protect its interests. See id. When an ongoing series of conversions is occurring,
It defies common sense, for the purposes of [mitigation and] avoidable consequences, to treat each [act] as a new and different, unknown and unanticipated, tort. Under this reasoning, [the injured party], with full knowledge of [the tortfeasor’s] fraud, could have allowed it to continue for years without notifying [the defendant] and then have held [the defendant] liable for the full amount of the loss. [The injured party] may not with impunity turn a blind eye to [the tortfeasor’s] misdeeds.... “The community’s notions of fair compensation to an injured plaintiff do not include wounds which in a practical sense are self-inflicted.”
Universal Premium Acceptance Corp. v. York Bank & Trust Co., 1996 WL 432488, *7 (E.D.Pa.1996) (citations omitted).
[¶ 75.] Considering the evidence in a light most favorable to the non-moving party, LaBolt, there are genuine questions in dispute on the issue of mitigation of damages. LaBolt identified facts suggesting that WestCon may have intentionally or heedlessly failed to protect its own interests after it believed that conversions were occurring. As early as May 5, 2003, WestCon’s manager, while reporting an unrelated burglary of WestCon’s office, informed the police that WestCon believed 22,000 bushels of grain had been stolen. According to LaBolt’s affidavit in opposition to summary judgment, WestCon’s manager disclosed a suspected theft scheme while Pew was committing his offenses. According to the information provided by WestCon, the Milbank Police Chief believed that WestCon suspected something “criminal in nature” was occurring. Yet WestCon’s credit manager conceded at the summary judgment hearing that WestCon employed no security measures to prevent the ongoing thefts until December 7, 2004.
[¶ 76.] As evidence that WestCon failed to mitigate its damages, LaBolt also relied on Pew’s deposition testimony, in which Pew described how easy it was to steal WestCon’s grain. He would drive up to the silo, park under the chute, pull on a chain, and the grain would gravity load into his truck. It took about three minutes. He was able to steal grain loads over 100 times because WestCon did not actually lock the silo. Pew could see the padlocks hanging by the chute. The chute, as described by Pew and another witness, was twenty feet from the ground. Pew was able to steal the grain without having to climb up to the chute, “jimmy” a lock, or use any kind of special tool. “Occasionally,” according to Pew, WestCon would lock the silo chute and Pew could not steal any grain. Thus, there is evidence that West-Con was able to secure its grain but did not regularly do so.
[¶ 77.] Allowing a mitigation defense in a conversion case does not mean that “the injured person has a duty to act” or “that the conduct of the tortfeasor ceases to be a legal cause of the ultimate harm[.]” Restatement (Second) Torts, § 918 cmt. a. Rather, “recovery for the harm is denied because it is in part the result of the injured person’s lack of care, and public policy requires that persons should be discouraged from wasting their resources, both physical or economic.” Id. WestCon did not have a duty to mitigate damages before the grain was first stolen, but if WestCon had information that its grain *410 was steadily disappearing through conversion and heedlessly failed, to protect its business interests, a duty to mitigate may have arisen. See Universal Premium Acceptance Corp., 1996 WL 432488.
[¶ 78.] This is not the same as saying that WestCon’s damages should be reduced because it was negligent, ie., “could have avoided [the harm] by the use of reasonable effort or expenditure after the commission of the tort.” See Restatement (Second) Torts, § 918(1). Nor does it mean that Pew should somehow escape criminal responsibility for his thefts because of WestCon’s failure to mitigate its damages. See Restatement (Second) Torts, § 918 cmt. a (“[A] wrongdoer is criminally responsible for all the legal consequences of his crime, irrespective of the lack of care of his victim, either before or after the commission of the tort.”). Rather, the question here is whether WestCon “intentionally or heedlessly failed to protect [its] own interests” after it had knowledge of the danger or harm. See Restatement (Second) Torts, § 918(2). The record contains genuine issues of material fact on this question of damages.
[¶ 79.] This issue should be reversed and remanded for a trial on mitigation of damages. I concur on the other issues.
[¶ 80.] MEIERHENRY, Justice, joins this special writing.