CAMPBELL, Appellant, v. JACKSON, et al, Respondents.

(272 N. W. 293)

(File No. 7953.   Opinion filed April 8, 1937)

*Fred D. Shandorf,* of Mitchell, for Appellant.

*Miller & Miller* and *David M. Rogers,* all of Mitchell, for Respondent Cohrt.

*E. W. Benson,* of Mitchell, for Respondent Jackson.

SMITH, J. This appeal involves the question of the contributory negligence of the plaintiff. It arises out of the collision of automobiles at an intersection. The trial court determined that the plaintiff was guilty of contributory negligence as a matter of law, and directed a verdict for defendant at the close of plaintiff's case in chief. The appeal is from the judgment entered on that verdict, and from an order overruling a motion for new trial.

We assume the negligence of the defendant, and under familiar rules we state the facts in the light most favorable to the plaintiff. We designate the parties as they were below, and use "defendant" to include Jackson, the driver employee, and Cohrt, the owner employer.

Plaintiff was driving the car approaching from the right, de-

fendant was driving the car approaching from the left, and both cars were approaching the intersection at approximately the same time. Plaintiff was driving east on the main-traveled highway in the open country at the southeast corner of Letcher in Sanborn County, S. D. Defendant was driving south on the intersecting highway, and there was no other traffic at the intersection. Both highways were graveled at and near the intersection, the intersection was 24 feet square, and nothing obstructed the view of either driver. The record is silent as to any prior lookout, but shows that plaintiff first observed the defendant when plaintiff was 30 feet west of the intersection. At the time, plaintiff was driving at a speed of 25 miles per hour, and was proceeding along the right-hand side of the road. When thus discovered, defendant was 50 or 60 feet north of the intersection, and was traveling on the east or left-hand side of the road, and was approaching at what was estimated by plaintiff as a speed of 30 miles or better per hour. From this moment forward to the time of collision, plaintiff continued to watch defendant. Both cars maintained their original speed and direction until the collision, which occurred in the southeast quarter of the intersection. At the time plaintiff reached the intersection, defendant was probably 30 to 40 feet north of the intersection. When plaintiff's front wheels entered the intersection, he judged the defendant to be "25 or 30, maybe 40, feet north of the intersection." "I started to cross the intersection and was driving right along and saw him coming on down and thought I was past him, and about that time he hit me," plaintiff said. On direct examination plaintiff stated: "I believe I tried to push on the gas just a little to avoid him hitting me. I was east of the center of the intersection of the road that runs north and south when I pushed down on the gas a little bit and increased my speed to avoid him." On cross-examination this was qualified as follows: "When he entered the intersection I believe I tried to get a little more speed out of my car. I was probably in the center of the road when I increased the speed of my car. At least the front of my car had got to the center before I increased the speed. I did not increase the speed much because a four cylinder don't pick up so very fast." In the intersection, the right side of plaintiff's car was 3 feet from the south line of the gravel of the east and west road. The defendant's car struck the plaintiff's

car at the rear of the running board and at the left rear wheel and fender. At the time of the impact, the front of plaintiff's car was either leaving, or just out of, the intersection. The impact turned plaintiff's car end for end and exploded plaintiff and his companion therefrom to the south side of the roadway, southeast of the intersection. Plaintiff suffered a severe fracture of one of his limbs. Plaintiff drove a Chevrolet coach 13 feet 6 inches in length, which was purchased in 1928. Its value was fixed at $100 at the time of the collision. Defendant drove an Oldsmobile sedan. ·After the collision, there were marks in the southeast corner of the southeast quarter of the intersection, showing where plaintiff's car had been pushed. The car came to rest facing west on the south shoulder of the road, somewhat east of the intersection. The defendant's car came to rest immediately west of plaintiff's car on the south highway just south of the intersection, and was facing slightly in a southeasterly direction. Damage was done to the left rear fender, running board, rear wheels and axle of plaintiff's car, and defendant's car but lost a bumper.

▮▮▮ In the Restatement of the Law of Torts of the American Law Institute, the law of contributory negligence applicable to the case at hand is stated in three separate paragraphs as follows:

Section 463. "Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection and which is a legally contributing cause, co-operating with the negligence of the defendant in bringing about the plaintiff's harm."

Section 464. "(1) Unless the plaintiff is a child or an insane person, the standard of conduct to which he should conform is the standard to which a reasonable man would conform under like circumstances." ·

Section 470. "The fact that the plaintiff is acting in an emergency not created by his own antecedent negligence is a factor to be taken into account in determining whether his conduct is free from contributory negligence."

▮▮▮ On page 796 of the same work appears the following comment on the emergency rule: "The law does not require of the actor more than it is reasonable to expect of him under the

circumstances which surround him.  Therefore, the court and jury in determining upon the propriety of the actor's conduct must take into account the fact that he is in a position where he must make a speedy decision between alternative courses of action and that, therefore, he has no time to make an accurate forecast as to the effect of his choice.  The mere fact that his choice is unfortunate does not make it improper even though it is one which the actor should not have made had he had sufficient time to consider all the effects likely to follow his action."

There is no need for restatement of the well-settled rules dealing with the respective functions of court and jury in passing on questions of fact.  Certain other rules, however, fixing the rights and duties which accompanied plaintiff as he approached the collision need to be held up to view as a guide to decision.

"When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right. * * * The driver of any vehicle traveling at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder." Chapter 251, Session Laws of 1929, section 19.

The driver approaching from the right may proceed toward and into the intersection under the assumption that the driver from the left will yield the right of way. Litz v. Arbeiter, 57 S. D. 481, 233 N. W. 914; Berry, Automobiles ('Sixth Edition) vol. 1, p. 189, § 225; 21 A. L. R. 992; 37 A. L. R. 517; 47 A. L. R. 622.

When, however, a reasonable man in the situation of the driver on the right would recognize that the driver on the left does not intend to yield the right of way, then it becomes the duty of the driver on the right to do what such a reasonable man would do in such an emergency to protect himself and others from harm. Litz v. Arbeiter supra; Morris v. Bloomgren, 127 Ohio St. 147, 187 N. E. 2, 89 A. L. R. 831; 5 Am. Jur. p. 664, § 291.

We dismiss from consideration the rule requiring the driver on the right to maintain a vigilant lookout as he approaches an intersection with the observation that the facts in the instant case show that the plaintiff did look, and that nothing would have been gained by earlier observation of one traveling toward the intersection from the left at little better than thirty miles an hour.  This

phase of the matter was deemed not to have sufficient weight to justify mention by counsel for respondents in the motion for direction or in their brief.

From this background of fact and law it appears that as plaintiff approached the intersection he had not forfeited his right of way through any violation of the law of the road, and was charged with no duty to speed, halt, or alter his course until he discovered, or should have discovered, that defendant did not intend to yield. It further appears from analysis that the exact circumstances with reference to which a standard of conduct may be erected by which to judge plaintiff's conduct subsequent to the discovery of this fact cannot be determined until the trier of the fact can say with some certainty just when, under the facts stated, a reasonable man should have determined that defendant did not intend to yield the right of way. The testimony on which the trial court directed a verdict left room for a considerable difference of opinion as to the location of the respective cars at the moment this judgment should have been formed. The extent of this range appears when we consider the extreme inferences permissible under the record.

If the fact should have been apparent when plaintiff, traveling at such a moderate speed, was 30 feet from the intersection, minds might agree that he could have slowed up and turned to the right. If, on the other hand, he was entering or actually in the intersection at the time, it seems clear, in view of the narrow quarters available for maneuvering, that the most he could have accomplished by stopping or altering his course would have been to expose a different portion of his car to impact. Under this latter situation, reasonable minds might conclude that to proceed forward offered the sole possible avenue of escape. Reasonable minds might also conclude that even though choice of the alternative of proceeding might not have been the best when calmly considered, it would constitute such a choice as was proper in view of the necessity of a decision in the face of an emergency.

Counsel for respondents predicate their whole argument upon an assumption that plaintiff should have recognized defendant's true intention at the instant of plaintiff's first observation of defendant, or when plaintiff was 30 feet and defendant 50 or 60

feet from the intersection. While we appreciate that a reasonable man under such circumstances would form an almost automatic judgment from the whole picture presented to his senses and that he would not take time to separately consider the several factors such as speed, distance, and space, yet we are certain that even such a judgment would consume some time during which plaintiff's car would be traveling forward and during which the gateway of escape would be closing. Further, we have been unable to conclude that the whole picture first presented to plaintiff's vision necessarily compelled instantaneous judgment that defendant did not intend to yield. Counsel for respondents earnestly contend, because plaintiff discovered defendant traveling on the left side of the road, contrary to law, that he should have judged that defendant would be consistent and fail to conform to the law in other respects. Such a conclusion does not necessarily follow. On the contrary, a reasonable man might well have concluded that defendant, traveling at little better than 30 miles per hour, had given way to the left in preparation for a turn to the right.

We conclude that different minds might reasonably differ as to the position of the cars at the instant when plaintiff should have formed a judgment, and that this uncertainty required submission to the jury.

Further uncertainties confront the trier of the fact when attention is given to plaintiff's conduct after he formed the judgment to proceed forward. On first impression it seems clear that a reasonable man, having formed such a judgment, would forthwith have accelerated his speed in order to enhance his chance of clearing defendant. Further consideration, however, suggests that, accepting plaintiff's testimony as true, he may have made some slight effort in that direction, and that reasonable minds might differ as to the degree of pick-up available to the driver of an eight year old four cylinder car and as to whether attempt at acceleration would actually result in added power or a reduction in power. Certainly minds might differ as to the time and distance available to plaintiff in which to accelerate his speed and as to whether this failure on the part of the plaintiff, if he did fail, was chargeable to the emergency in which he was acting, or whether such failure was in fact a legally contributing cause of the collision.

Although a jury might well determine that plaintiff was guilty of contributory negligence in failing to act in self-protection after discovering his peril, viewing the circumstances as a whole, in the light of the fact that plaintiff was acting in an emergency precipitated by the assumed negligence of the defendant, we conclude that different minds might reasonably arrive at different conclusions with respect to this issue, and that the learned court erred in directing a verdict.

Counsel for respondents urge the case of Jamieson v. Gerth, 61 S. D. 514, 249 N. W. 921, and several other cases wherein the negligence of plaintiff consisted in a failure to look or maintain observation, as controlling. Counsel states in effect that there is no difference between failing to look and in failing to take effective action while looking. In our opinion, this argument is conclusively answered by the court in the case of Glynn v. Krippner et al. (C. C. A. 8th) 60 F. (2d) 406, 409: "Here the plaintiff did not fail to look. He did look. The District Court [47 F. (2d) 281] was of the view that 'there can be no logical distinction between failing to look and failing to heed.' But there is this distinction: 'Looking' is a definite precaution which admits of no alternative consistent with due care. 'Heeding,' on the other hand, involves judgment and choice. On approaching an intersection, a driver should always look, but heeding what he sees involves a determination of what is best to do. No one would suggest that a driver on the highway must always stop and wait whenever he sees an approaching car. What he must do is determine whether the car is sufficiently near and coming at a sufficient rate of speed to require him to stop and wait. Because of the very fact that 'heeding' an approaching car calls for the exercise of judgment and choice in an instant of time, whether a driver did or did not use ordinary care nearly always will be a jury question. Even the reasonably prudent man may make an error in judgment as to what course to take when a sudden emergency is present, whereas never will he fail to look on approaching an intersection."

The judgment and order of the lower court may be, and are, hereby reversed.

RUDOLPH, P.J., and ROBERTS and WARREN, JJ. concur. POLLEY, J., dissents.