McKIVER, Respondent, v. THEO. HAMM BREWING CO., et al, Appellants

(297 N. W. 445.)

(File No. 8396. Opinion filed April 16, 1941.)

Rehearing Denied May 27, 1941.

**Davenport & Evans,** of Sioux Falls, and **Fuller & Camp-bell,** of Aberdeen, for Appellants.

**Geo. H. Fletcher,** of Aberdeen, for Respondent.

ROBERTS, J. This is an action for the wrongful death of Lyle McKiver who was killed when a Ford pickup truck which he was driving was struck at a highway intersection by a Chevrolet coach owned by the Theo. Hamm Brewing Company and driven by Walter Rupp. There was a verdict for plaintiff administratrix, on which judgment was entered. Defendants appeal, assigning errors upon the denial of motions for directed verdict and judgment n. o. v. and upon refusal of the court to give certain requested instructions.

The accident occurred at about 11:30 o'clock in the forenoon of June 14, 1939, at an intersection about 12 miles east of Aberdeen where U. S. Highway 12, an east and west oiled surfaced state trunk highway, is crossed at right angles by Deane Highway, a non-arterial graveled road. Immediately before the accident, Lyle McKiver was driving the truck in a southerly direction on Deane Highway. Walter Rupp was driving the Chevrolet coach in an easterly direction on U. S. Highway 12. The only eye witness who testified was the defendant Walter Rupp. He testified that as he approached the intersection traveling at approximately 50 miles per hour he observed the truck approaching from the north at a distance which he estimated to be 400 or 500 feet from the intersection; that the estimated distance of his car from the intersection when he first saw the truck was 600 or 700 feet; that he assumed that plaintiff's intestate would stop before entering the intersection; and that he did

not again observe the truck until it was "just entering the black top." This witness further testified that he couldn't state how fast the McKiver truck was approaching the intersection when he observed it, but that "it was going fairly fast" and that he knew that "it was going over 20 miles an hour."

A deputy sheriff who was on the scene shortly after the accident testified as to marks on the highway and location of the vehicles. From this testimony as to skid marks supplemented by a photograph of marks on the highway, it appears that the point of impact was in the southeast corner of the intersection. The truck was struck on the right side in front of the cab. Following the collision, the truck was in the ditch near the southeast corner of the intersection, a distance of 39 feet from the point of impact, and the Chevrolet came to a stop in the field to the south of the truck, a distance of 71 feet·from the point of impact.

It is uncontroverted that decedent having resided continuously during his lifetime in the community and having frequently passed over this highway was familiar with the intersection, that the day was clear, and that he had unobstructed view of approaching traffic. Defendants offered in evidence a plat prepared by a qualified engineer. Elevations along each highway at intervals of 100 feet are shown. U. S. Highway 12 for a distance of 1,320 feet to the west of the intersection and Deane Highway for a distance of. 900 feet to the north of the intersection are almost level. Within the triangular area formed by drawing a line from the point 1,320 feet west of the intersection to the point 900 feet north of the intersection there are no elevations higher than the surface of the two highways. This tract of land was planted to corn which was not more than knee high at the time of the accident and there were no buildings or other objects obstructing a view of either highway.

It is admitted that U. S. Highway 12 had been regularly designated as a state trunk highway and that there were stop signs on Deane Highway giving notice of the existence of an intersection with a trunk highway.

It appears from the evidence that one witness observed

defendant Rupp driving eastward toward the intersection, and it may be reasonably inferred from the testimony of this witness that defendant was driving in excess of his estimate of 50 miles per hour.

 SDC 44.0321, § 22, Chapter 251, Laws 1929, as originally enacted and in effect at the time of the accident provided that whenever a through highway was designated "by erecting at the entrances thereto from intersecting highways, signs notifying drivers of vehicles to come to a full stop before entering * * * such designated highways," it was "unlawful for the driver of any vehicle to fail to stop in obedience thereto." The purpose of this statute is apparent. The statute commands the duty to stop to enable the driver entering from an intersecting highway to make observations and to ascertain that the way is clear before he proceeds to enter or cross the through highway. Plaintiff's intestate would not have performed his duty merely by stopping. It was his duty to stop and to make before and after entering the intersection such observations as due care under the circumstances required. See Jamieson v. Gerth, 61 S. D. 514, 249 N. W. 921; Anderson v. Huntwork, 66 S. D. 411, 284 N. W. 775. Though the statute recognizes a superior right in the driver on the through highway, the driver on such highway is not relieved from the duty of exercising due care not to injure others approaching on intersecting highways. Jamieson v. Gerth, supra. We may assume without deciding that there was sufficient evidence to sustain a finding by the jury that defendant Rupp was negligent in approaching the intersection at an excessive speed, but if decedent was negligent in failing to stop or in driving into the intersection without heeding the approach of the car driven by defendant Rupp, such negligence without doubt proximately contributed to the collision and there can be no recovery.

 There is no evidence in the record indicating whether decedent did or did not stop at the intersection or observe the car driven by defendant Rupp as it approached the intersection. Because there was no evidence as to the conduct of decedent, it is contended that there arose a pre-

sumption of due care. It is the established law of this state that in the absence of any evidence as to the conduct of a person who died of injuries received in an accident there is the presumption that he, acting on the instinct of self-preservation, was in the exercise of ordinary care. Whaley v. Vidal, 27 S. D. 627, 132 N. W. 242; see also Stratton v. Sioux Falls Traction System, 55 S. D. 464, 226 N. W. 644. This presumption, like other presumptions, disappears when evidence is introduced from which facts may be found. As stated by this court in the case of Peters v. Lohr, 24 S. D. 605, 124 N. W. 853, 855:

"A presumption is not evidence of anything, and only relates to a rule of law as to which party shall first go forward and produce evidence sustaining a matter in issue. A presumption will serve as and in the place of evidence in favor of one party or the other until prima facie evidence has been adduced by the opposite party; but the presumption should never be placed in the scale to be weighed as evidence. The presumption, when the opposite party has produced prima facie evidence, has spent its force and served its purpose, and the party then, in whose favor the presumption operated, must meet his opponent's prima facie evidence with evidence, and not presumptions."

This burden of going forward with the evidence differs from the burden of proof. A presumption casts upon the person against whom it is applied the duty to go forward with the evidence on the point to which the presumption relates. The burden of proof, meaning the duty of establishing the truth of a claim by such quantum of proof as the law requires, rests upon the party having the affirmative of an issue. The latter never shifts during the course of a trial, while the burden of going forward with the evidence may shift.

It is claimed that when the surrounding circumstances and physical facts are considered it is apparent that reasonable minds cannot differ on the question of the contributory negligence of decedent; that the presumption of due care was conclusively rebutted and the question of the contributory negligence of decedent was not one for the jury. De-

cedent was familiar with the intersection, and had an unobstructed view of traffic approaching on the through highway. If decedent stopped before entering the intersection in obedience to the statute requiring him to stop and kept a reasonably careful outlook, it is obvious that he would have seen the approaching car and averted the accident. The facts in the case of Whaley v. Vidal, supra, cited by respondent are distinguishable. That was an action for the death of one killed by a train at a railroad crossing. The accident occurred in the nighttime, and the evidence was conflicting as to whether or not decedent actually knew that he was approaching the railroad crossing before he went upon it. The situation presented in the present case is different from that appearing in Campbell v. Jackson, 65 S. D. 154, 272 N. W. 293. In that case, plaintiff had the right of way and did not become aware that the driver of the other vehicle approaching the intersection did not intend to yield the right of way until an emergency was created.

It is argued that decedent having a right to assume that defendant Rupp would not approach the intersection at an excessive rate of speed believed that he would be able to cross the intersection before the other car reached it. It was held by this court in Cameron v. Miller, 43 S. D. 429, 180 N. W. 71, 72, that plaintiff was not contributorily negligent as a matter of law when riding a bicycle he turned to the left side of a street to pass into an alley and collided with an automobile approaching from the other direction. Plaintiff in that case testified that he saw the automobile, but believed that he had ample time to cross in front of it. This court said: "Plaintiff had a right to rely on the assumption that defendant was traveling at a speed within the limit fixed by the ordinance (20 R.C.L. 118), unless the unlawful speed of the automobile was apparent to and realized by him. It does not appear that plaintiff did realize the speed at which the auto was traveling, and, if the auto had been traveling even three miles an hour less than it was in fact traveling (no matter what its actual speed was), it is beyond all question that the distance that would have been

traveled by the auto, from the time plaintiff started to make the turn across the street until the time of the collision, would have been enough less than the distance actually traveled by said auto to have permitted of the bicycle passing the point of collision before the auto reached such point. * * * Were it not for the fact that the plaintiff was a child, the trial court, perhaps, should * * * have directed a verdict for defendant; the act of plaintiff, in crossing the street in front of the approaching automobile, being one which, if it had been that of an adult person, might have been held negligent as a matter of law." Whether an ordinarily prudent driver could have been deceived by the excessive speed of another car approaching the intersection in question on a clear day, we need not determine. There is no evidence that decedent was deceived by the speed of the car driven by defendant Rupp and the presumption of due care, as above indicated, does not constitute evidence of this fact. The accident in Hittle v. Jones, 217 Iowa 598, 250 N. W. 689, 693, occurred in a similar manner, and the court therein said:

"It is said by the appellant that her intestate, relying upon that speed limit, may have been deceived concerning the excessive speed of the car driven by Ray Jones. Nothing in the record indicates whether the appellant's intestate took the speed limit into consideration when he drove across the intersection; nor is there any indication in the record that the appellant's intestate was deceived concerning the excessive speed of the car driven by Ray Jones. The rule relating to the inferences that may be drawn from the instinct of self-preservation does not aid the appellant in her claims that her intestate at the time actually took into consideration the fact that the appellee Ray Jones would not violate the speed limit; nor does such inference based upon the instinct of self-preservation permit us to assume that the appellant's intestate was deceived concerning the excessive speed of the car driven by the appellee Ray Jones. This rule relating to the instinct of self-preservation goes no farther than to supply, for an otherwise deficient record, the inference that the appellant's intestate used due care."

■ The incontrovertible surrounding circumstances and physical facts in the present case overcame the presumption of due care .and conclusively established contributory negligence on the part of decedent. It is manifest that he either did not look or if he looked and observed what he was bound to see he would have observed the approaching car and would have avoided the collision.

The judgment appealed from is reversed and the cause is remanded with directions to dismiss the action.

All the Judges concur.