2000 SD 55

**Keith D. CARPENTER and Sherri Carpenter, Husband and Wife, Plaintiffs and Appellees,**

v.

**CITY OF BELLE FOURCHE, A Municipal Corporation and John J. Wainman, Jointly and Severally, Defendants and Appellants.**

Nos. 20901, 20923.

Supreme Court of South Dakota.

Argued Feb. 16, 2000.

Decided April 26, 2000.

Edward C. Carpenter and Gregory Strommen of Costello, Porter, Hill, Heisterkamp, Bushnell, & Carpenter, Rapid City, South Dakota, Attorneys for plaintiffs and appellees.

Jerry D. Johnson of Banks, Johnson, Colbath & Kerr, Rapid City, South Dako-

ta, Attorneys for defendants and appellants.

KONENKAMP, Justice.

[¶ 1.] While speeding to approach and "pace" two motorcycles, a city police officer struck and injured a motorist who was turning at an intersection. Following a trial for negligence against both the city and its officer, the jury found for the motorist. The defendants appeal, contending the motorist was contributorily negligent as a matter of law and the trial court erred in denying their motions for summary judgment, directed verdict, judgment notwithstanding the verdict, and new trial. We affirm, as the issues of negligence were properly left for the jury.

## Facts

[¶ 2.] This two-car automobile collision occurred on March 26, 1993, in Belle Fourche, South Dakota. We relate the incident in a light most favorable to the verdict. *Alberts v. Mutual Serv. Cas. Ins. Co.*, 80 S.D. 303, 123 N.W.2d 96, 99 (1963). At 6:40 p.m., shortly after sundown, Belle Fourche police officer John Wainman turned his patrol car off Ziebach Street onto Highway 85, and drove north toward town. In this area, Highway 85 has four lanes, two northbound and two southbound. Where Wainman entered, the highway curves slightly. After turning onto the highway, the officer heard what sounded like two motorcycles drag racing two blocks ahead of him. He turned into the outside (curbside) lane and passed a light-colored Ford pickup traveling north on the inside lane. He accelerated attempting to get near enough to "pace" the motorcycles. At the time, the posted speed limit was 45 m.p.h. Wainman's speed exceeded 60 m.p.h. At no time did he activate his siren or emergency lights.

[¶ 3.] Meanwhile, Keith Carpenter drove west on Summit Street, approaching the intersection of Highway 85 north of where Wainman had entered the highway. Tam-my Halvorsen, the owner of the car Keith was driving, was a passenger. Keith had been repairing the wiring in Halvorsen's car, a 1981 Chevrolet Chevette, and was taking it to his home to complete the work. Keith's wife, Sherri, was driving the Carpenters' car directly behind them. When Keith reached the intersection, he brought the car to a complete stop, but the evidence conflicts on whether he checked for traffic before pulling into the intersection. Keith testified during his deposition taken two years before trial that he had no recollection of looking either right or left before he pulled out, but that he had waited at the intersection for traffic to go by. At trial, Keith testified that he looked to the right, to the left, and then back to the right before proceeding. Sherri also testified at trial that as she sat in the car behind him she saw Keith look in both directions.

[¶ 4.] Keith began turning left onto Highway 85, headed toward the southbound lanes. Officer Wainman was approximately 500 feet away. When he spotted Keith pulling out, he attempted to avoid a collision by braking and swerving left into the inside lane, but in vain. Wainman's patrol car skidded 100 feet, then slammed into the driver's side door of the Chevette, just as its front wheels crossed the centerline of the four-lane highway. The Chevette came to rest in the middle of the highway, 100 feet north of the point of impact. The patrol car slid off the road on the southbound side, became airborne, and then landed in the ditch. Both cars were destroyed. Keith was severely injured. He was transported by air ambulance to a trauma unit in Billings, Montana.[1]

[¶ 5.] The Carpenters sued the City of Belle Fourche and its employee, Officer Wainman. In turn, these defendants sued the two motorcyclists for contribution, but later dismissed the claim with prejudice. The circuit court denied the defendants'

1. Halvorsen was treated and released from the hospital that evening, and Officer Wain-man received only minor abrasions on his arms and legs.

motions for summary judgment. Following a weeklong trial, a jury returned a verdict for the Carpenters, awarding Keith $450,000, and Sherri $22,000. Motions for judgment n.o.v. and new trial were denied. On appeal, the defendants assert that the trial court erred in denying (1) their motion for summary judgment, (2) their motions for mistrial and for a new trial based on the use of an unsworn statement during trial, (3) their motions for a mistrial and for a new trial based on a reference made to their dismissal of the motorcyclists, (4) their motions for directed verdict and for a judgment n.o.v. on the issue of liability, and (5) their proposed jury instructions. For clarity, we combine in Part A below the contributory negligence arguments in Issues 1 and 4.

### Standard of Review

[¶ 6.] "Under our familiar standard for reviewing summary judgments, we decide only whether genuine issues of material fact existed and whether the law was correctly applied." *Kobbeman v. Oleson,* 1998 SD 20, ¶ 4, 574 N.W.2d 633, 635. When making this analysis, we view the evidence in the light most favorable to the nonmoving party and resolve reasonable doubts against the moving party. *Satellite Cable Services, Inc. v. Northern Elec. Coop., Inc.,* 1998 SD 67, ¶ 5, 581 N.W.2d 478, 480. As we take an independent review of the record, we are not bound by the trial judge's factual assessments in granting summary judgment. *Fritzel v. Roy Johnson Constr.,* 1999 SD 59, ¶ 7, 594 N.W.2d 336, 338 (citing *Spenner v. City of Sioux Falls,* 1998 SD 56, ¶ 7, 580 N.W.2d 606, 609).

[¶ 7.] A new trial motion rests within sound judicial discretion of the court, and we will not disturb the judge's decision absent an abuse of discretion. *Schmidt v. Royer,* 1998 SD 5, ¶ 9, 574 N.W.2d 618, 621 (citing *Tunender v.*

*Minnaert,* 1997 SD 62, ¶ 9, 563 N.W.2d 849, 851) (other citation omitted). We presume the correctness of evidentiary rulings. *State v. Goodroad,* 1997 SD 46, ¶ 9, 563 N.W.2d 126, 129 (citation omitted). In reviewing these rulings, error must be shown to be an abuse of discretion, and must be prejudicial to the appellant. *State ex rel. Dep't of Transp. v. Spiry,* 1996 SD 14, ¶ 11, 543 N.W.2d 260, 263. "The test is not whether we would have made the same ruling, but whether we believe a judicial mind, in view of the law and the circumstances, could have reasonably reached the same conclusion." *Goodroad,* 1997 SD 46, ¶ 9, 563 N.W.2d at 129 (citing *State v. Rufener,* 392 N.W.2d 424, 426 (S.D.1986)). "A jury's verdict should not be set aside 'except in extreme cases where it is the result of passion or prejudice or the jury has palpably mistaken the rules of law....'" *LDL Cattle Co. v. Guetter,* 1996 SD 22, ¶ 13, 544 N.W.2d 523, 526–27 (quoting *Stoltz v. Stonecypher,* 336 N.W.2d 654, 657 (S.D.1983)); *Lewis v. Storms,* 290 N.W.2d 494, 497 (S.D.1980) (citation omitted).

### Analysis and Decision

#### A. Contributory Negligence as a Matter of Law

[¶ 8.] Under the "through highway" or "boulevard" rule, as it is sometimes called, a driver approaching an intersection from an unfavored road must yield the right-of-way to drivers on the "through highway" (SDCL 32–29–2) already in or approaching the intersection. See *Davis v. Knippling,* 1998 SD 31, ¶ 7, 576 N.W.2d 525, 527. Correspondingly, our stop sign law provides that after stopping, a driver "may not proceed into the intersection until certain that such intersecting roadway is free from oncoming traffic which may affect safe passage." SDCL 32–29–2.1.[2]

---

2. The full text of SDCL 32–29–2.1 states:
 Unless directed to proceed by a police officer or traffic control signal, every driver of a vehicle approaching a stop intersection indicated by a stop sign shall come to a full stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or if none,

The defendants contend in both Issues 1 and 4 that by summary judgment, directed verdict, or judgment n.o.v., the trial court should have found Keith Carpenter contributorily negligent more than slight, thus barring him from recovery.[3] Such rulings are ordinarily unobtainable in negligence actions, for the standard of reasonableness must often be applied to conflicting testimony. Only when the evidence leads but to one conclusion can negligence be found as a matter of law. *Trammell v. Prairie States Ins. Co.*, 473 N.W.2d 460, 462 (S.D. 1991) (citations omitted). Most often, questions of contributory negligence in intersectional accidents are for the jury, especially when reasonable persons might fairly reach different conclusions. Blashfield Automobile Law and Practice § 114.81 (3rd ed. 1965).

[¶ 9.] Contributory negligence issues have been taken from the jury when the evidence appeared indisputable. In *McKiver v. Theo. Hamm Brewing Co.*, 67 S.D. 613, 297 N.W. 445 (1941), this Court barred recovery to an unfavored driver in an intersection collision because the driver was contributorily negligent as a matter of law. McKiver, after proceeding past a stop sign, was struck by Rupp, who was speeding on a through road. "Rupp was negligent in approaching the intersection at an excessive speed, but if [McKiver] was negligent in failing to stop or in driving into the intersection without heeding the approach of the car driven by defendant Rupp, such negligence without doubt proximately contributed to the collision and there can be no recovery." Id. at 447. That Rupp was speeding made no difference in the analysis: "It is manifest that [McKiver] either did not look or if he looked and observed what he was bound to see he would have observed the approaching car and would have avoided the collision." Id. at 448. The plaintiff's verdict was reversed and the action ordered dismissed.

[¶ 10.] Four years after McKiver, this Court again ruled as a matter of law that the unfavored driver was guilty of contributory negligence more than slight because it was that driver's "duty to stop and to make, before and after entering the intersection, observations and to adapt his movements to accord with his own safety." *Kundert v. B.F. Goodrich Co.*, 70 S.D. 464,

then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, the driver shall yield the right-of-way to any vehicle which has entered or is approaching the intersection from another highway and may not proceed into the intersection until certain that such intersecting roadway is free from oncoming traffic which may affect safe passage. A violation of this section is a Class 2 misdemeanor.

3. The Carpenters argue that the denial of summary judgment is not appealable because a final judgment was entered after a full trial on the merits. They cite federal cases applying Federal Rule 56, as well as an Iowa case, that held that a ruling denying summary judgment is interlocutory in nature and is not appealable after a full trial on the merits because the earlier summary judgment ruling has been superseded. SDCL 15–26A–7 states which orders and determinations by the trial court are subject to review on appeal following a judgment:

On appeal from a judgment the Supreme Court may review any order, ruling, or determination of the trial court, including an order denying a new trial, and whether any such order, ruling, or determination is made before or after judgment involving the merits and necessarily affecting the judgment and appearing upon the record.

*Id.* The review must be of a ruling that both "involv[es] the merits" and "affect[s] the judgment." *Howells v. Howells*, 79 S.D. 480, 113 N.W.2d 533, 536 (1962). These requirements are met in this denial of summary judgment. The courts cited by the Carpenters are not governed by a statute such as SDCL 15–26A–7. We have on numerous occasions reviewed the denial of a motion for summary judgment after a full trial has been held and a verdict on the merits has been reached. *See Fritzel*, 1999 SD 59, 594 N.W.2d 336; *Veeder v. Kennedy*, 1999 SD 23, 589 N.W.2d 610; *Weins v. Sporleder*, 1997 SD 111, 569 N.W.2d 16; *Smith v. Highmore Farm Ltd.*, 489 N.W.2d 908 (S.D.1992). The matter is properly before us.

18 N.W.2d 786, 787 (1945). To the Court in Kundert, it was "apparent that [the unfavored driver] did not look at all or that he did not do so effectively." Id.

[¶ 11.] As *McKiver* and *Kundert* illustrate, an unfavored driver's duty to stop and yield the right-of-way is unqualified.[4] Indeed, we have repeatedly held that a motorist who enters an intersection from an unfavored road and fails to yield to a favored vehicle under the rules of the road is guilty of negligence as a matter of law. *Robertson v. Hennrich*, 72 S.D. 37, 29 N.W.2d 329 (1947); *Stacey v. Patzloff*, 67 S.D. 503, 295 N.W. 287 (1940); *Anderson v. Huntwork*, 66 S.D. 411, 284 N.W. 775 (1939); *see also Vlach v. Wyman*, 78 S.D. 504, 104 N.W.2d 817, 819 (1960). The unfavored driver's duty continues while traversing the intersection and until the driver becomes part of the flow of favored traffic or successfully crosses the intersection. *Kundert*, 18 N.W.2d at 787; *Rowan v. Becker*, 73 S.D. 273, 41 N.W.2d 836, 839 (1950). Put another way, an unfavored driver may not safely advance until favored motorists are out of the zone of danger. SDCL 32–29–2.1 (roadway must be "free from oncoming traffic which may affect safe passage").

[¶ 12.] On the other hand, the right of way on a through highway is not absolute. Favored drivers, though they have the primary right of way, must use reasonable care with due regard for the safety of others. *Burmeister v. Young-strom*, 81 S.D. 578, 139 N.W.2d 226, 229 (1965); *Grosz v. Groth*, 78 S.D. 379, 102 N.W.2d 834, 836 (1960); *Alborn v. Arms*, 74 S.D. 277, 52 N.W.2d 101, 104 (1952) (question for jury whether plaintiff on through highway was contributorily negligent); *Robertson v. Hennrich*, 72 S.D. 37, 29 N.W.2d 329, 331 (1947). When favored drivers know the road is protected by a stop sign at an intersection with another road, they may reasonably assume until seeing otherwise that motorists approaching the intersection will stop, look, and yield the right-of-way to drivers on the favored road. *Roth v. Jelden*, 80 S.D. 40, 118 N.W.2d 20, 24 (1962); *Burmeister*, 81 S.D. 578, 139 N.W.2d at 229. That drivers have the right-of-way will not relieve them of the duty to look for cars approaching on an intersecting road. *Grosz*, 102 N.W.2d at 836.

[¶ 13.] Exceeding the speed limit at an intersection will not automatically forfeit the right-of-way. Cf. *Sabo v. Beatty*, 39 Mich.App. 560, 197 N.W.2d 871, 873 (1972); Blashfield, supra, § 114.87. A favored driver's speed, however, is a factor to be considered in an intersectional accident; furthermore, speeding through an intersection has been held to be contributory negligence more than slight. *Grosz*, 102 N.W.2d at 836 (speeding driver could not blindly assume that cross traffic would stop and yield right of way). Id. But whether this negligence is "a substantial factor in bringing about the harm" remains a jury question. Id.

---

4. Although the traffic laws recited in *McKiver* and *Kundert* remain viable, the contributory negligence holdings in these decisions have limited value as precedent. The auto accident in *McKiver* occurred on June 14, 1939, before the enactment of South Dakota's first comparative negligence statute in 1941. SDC § 47.0304–1 (Effective July 1, 1941). *McKiver* applied pure contributory negligence law; that is, any negligence by the plaintiff completely barred recovery. The accident in *Kundert* happened on November 10, 1941. The *Kundert* Court applied the 1941 version of the comparative negligence statute, but the Court's interpretation of that statute was in accord with *Friese v. Gulbrandson*, 69 S.D. 179, 8 N.W.2d 438, 442 (1943): "[T]he legislature made use of the words 'slight negligence' to describe a quantum of want of such ordinary care as a reasonable man would exercise under the circumstances." It was not until nearly twenty-five years later, based on an article written by Judge Hanson of this Court, that the "absolute basis" of comparison with the hypothetical reasonable person was abandoned for the modern interpretation which calls for comparison of the plaintiff's negligence with the defendant's. *See Nugent v. Quam*, 82 S.D. 583, 152 N.W.2d 371, 376 (1967) (quoting *Associated Engineers, Inc. v. Job*, 370 F.2d 633, 640 (8th Cir.1966)).

[¶ 14.] An intersectional collision is not proof by itself that fault lies with the unfavored driver. As we have often recognized, the mere fact that an accident happened creates no inference that it was caused by someone's negligence. *Del Vecchio v. Lund,* 293 N.W.2d 474, 476–77 (S.D.1980) (citations omitted). In most circumstances, the question of contributory negligence for those entering a preferential highway protected by a stop sign remains for the trier of fact. Courtrooms are not laboratories, where traffic violations are validated invariably as if they were rules of physics. To learn the facts, we often depend on the fallible memories and faulty perceptions of witnesses. Drivers are not required to notice every vehicle within the range of vision, but only those within the radius of danger. *Jershin v. Becker,* 217 Neb. 645, 351 N.W.2d 48, 52 (1984) (citation omitted). "Before a verdict can be properly directed in such a case the position of the oncoming vehicle must be definitely located in a favored position, that is, that it was within that radius which denotes the limit of danger...." *Id.* (citation omitted).

[¶ 15.] We perceive a distinction between unfavored drivers who do not look or look but fail to see, and those drivers who look before entering an intersection, but misgauge the safety of the maneuver because they believe they have enough time to cross or they are misled about the speed or distance of an approaching vehicle. *See McKiver,* 297 N.W. at 448. The distinction is simply this: looking and seeing what is there to be seen is a matter of duty; looking and proceeding in the belief that one can safely do so is a matter of judgment. *See Ford v. Hochstetter,* 85 S.D. 4, 176 N.W.2d 501, 504 (1970); *Cowan v. Dean,* 81 S.D. 486, 137 N.W.2d 337, 342 (1965); *Campbell v. Jackson,* 65 S.D. 154, 272 N.W. 293, 296 (1937) (citing *Glynn v. Krippner,* 60 F.2d 406, 409 (8th Cir.1932)); *Descombaz v. Klock,* 58 S.D. 173, 235 N.W. 502, 504 (1931) (if one looks, it is implied that one sees what is

there to be seen). Factors that might mask an approaching vehicle's speed or distance thus leading a prudent motorist to misjudge the timing of its arrival might include such things as weather conditions, distance, topography, angle of observation, and myriad other circumstances.

[¶ 16.] From the host of cases this Court has reviewed in the last century, we encapsulate the following rule: the mere occurrence of an accident in a protected intersection will not of itself establish negligence against the unfavored driver. Whether one looked and failed to see a vehicle within the zone of danger is a jury question, except in those rare instances when the evidence is so definite that reasonable minds could not differ. Before a court may declare contributory negligence more than slight as a matter of law, the location of the oncoming vehicle must have been in an obviously favored position within the radius of danger; otherwise, the question is one for the jury.

[¶ 17.] Although Keith Carpenter testified in his deposition that he did not remember clearly if he looked both ways before pulling away from the stop sign, he also testified that he waited at the stop sign for traffic from both directions. From that the jury could have inferred that he looked. At trial, he told the jury he did look both ways. The jurors must have believed him despite his shift in recollection. Tammy Halverson's testimony that she looked and did not see Officer Wainman's car approaching was also a factor for consideration. The Carpenters' expert witness testified that Wainman was going over 60 m.p.h. in the 45 m.p.h. zone just before the collision. The jury heard expert opinion on the difficulty of assessing speed and distance of oncoming vehicles. Jurors might have concluded that Keith looked down the road, but erroneously thought there was time to cross the highway. Officer Wainman's excessive speed may have contributed to Keith's misjudgment. *See Krcmar v. Reichert,* 26 Wis.2d 263, 131 N.W.2d 916, 918 (1965).

Thus there was sufficient evidence for the jury to conclude that Wainman was negligent as well, and it was for the jurors to evaluate the facts and weigh the relative negligence of Officer Wainman and Keith Carpenter. "If under all of the evidence, both parties could be found to be negligent, the comparative negligence of the parties is a question of fact which is within the province of the jury." *Estate of He Crow v. Jensen*, 494 N.W.2d 186, 190 (S.D. 1992) (citing *Thomas v. St. Mary's Roman Catholic Church*, 283 N.W.2d 254 (S.D. 1979)). Giving the Carpenters all reasonable inferences and viewing the facts in the light most favorable to them, there were factual issues making a ruling as a matter of law improper.

### B. Use of Unsworn Statement

■ [¶ 18.] Sherri Carpenter testified on direct examination that as Keith began to pull away from the stop sign, she did not see any automobiles other than a white pickup approaching the intersection from the south. Her counsel then asked her if she had given a statement to the police the evening of the accident. At this point, the matter was discussed with the court outside the hearing of the jury. When questioning before the jury continued, the Carpenters' counsel was allowed to show Sherri a copy of the unsworn statement she had given to law enforcement shortly after the accident occurred. Sherri was then asked again to tell the jury, without reading the statement, whether she had seen any other vehicles coming north on the road. She said that she had seen Officer Wainman's patrol car going fast and passing the pickup when it was still about one quarter of a mile away.

[¶ 19.] The defendants argue that her statement was not admissible as a memorandum of past recollection recorded under SDCL 19–16–9 (Rule 803(5)), that it could not be used to refresh her memory under SDCL 19–14–21 (Rule 612(a)) because her recollection was initially clear, and finally that the unsworn statement

could not be used to impeach Sherri because doing so would simply be a subterfuge for bringing in the inadmissible statement. Her testimony after refreshing her recollection was consistent with the testimony she gave in her deposition.

[¶ 20.] The document shown to Sherri was neither entered into evidence nor read to the jury. It was used only to trigger Sherri's memory, calling into play SDCL 19–14–21 (Rule 612(a)). SDCL §§ 19–14–21 through 19–14–23 provide for the method of refreshing witness recollection called present recollection refreshed. John W. Larson, *South Dakota Evidence* § 612.1 at 438 (1991). This "involves the use of anything that will actually trigger the witness' memory so that the witness may thereafter actually testify from memory. Anything that will cause the memory to be regained, . . . is permitted. This includes, of course, showing the witness a particular writing, . . ." *Id.* Counsel laid the minimal foundation for the testimony: Sherri said she did not have a clear recollection of what happened, that she had given a statement at the time of the accident, and that this writing would help refresh her recollection. She read the statement silently to herself, and then testified that she had seen the patrol car some distance back from the intersection. *See id.* at 439. Sherri was cross-examined on this testimony as well.

■ [¶ 21.] The defendants argue that this testimony had a prejudicial impact, preventing them from receiving a fair trial. "Prejudicial error is that error without which the jury would have probably returned a different verdict." *Shaull v. Hart*, 327 N.W.2d 50, 53 (S.D.1982) (citing *Schmidt v. Wildcat Cave, Inc.*, 261 N.W.2d 114 (S.D.1977)). Even without this testimony, however, the jury had other evidence on the location of Officer Wainman's vehicle when Keith pulled away from the stop sign. Sherri's testimony was partly corroborated by the Carpenters' expert witness, who testified that the patrol car was 500 feet from the intersection when

Keith began to pull away from the stop sign. We find no prejudicial error or abuse of discretion here. *See Watkins v. Ebach,* 291 N.W.2d 765, 768 (S.D.1980); *Alberts,* 80 S.D. 303, 123 N.W.2d at 103. The trial court properly denied the motions for a mistrial and a new trial.

### C. Referring to Dismissal of Third–Party Defendants

[¶ 22.] During Officer Wainman's cross-examination at trial, the Carpenters' counsel asked him whether he was trying to blame the accident on the motorcyclists he attempted to "pace" although they had been dismissed from the action. The judge admonished the jurors to disregard the remark, and during a hearing out of the jurors' presence the judge offered to again admonish them, stating that he found the remark on the dismissal of the third-party defendants "highly improper." Nonetheless, the court denied defense motions for a mistrial and a new trial. The defendants argue now that the question, though not answered, was prejudicial. They claim that the cautionary instruction given by the judge did not "cure" the error.

[¶ 23.] Our rule on harmless error is found in SDCL 15–6–61:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

"Prejudicial error is error which in all probability produced some effect upon the jury's verdict and is harmful to the substantial rights of the party assigning it."

*Kjerstad v. Ravellette Publications Inc.,* 517 N.W.2d 419, 426 (S.D.1994) (citing *State v. Michalek,* 407 N.W.2d 815, 818 (S.D.1987)). The defendants claim that the "prejudicial impact of this 'question' is clear"; that is, it was done so that the jury would draw an improper inference that either Wainman's attorney felt the motorcyclists were not to blame for the accident, or that the motorcyclists were not in fact to blame for the accident and Wainman alone caused it.

[¶ 24.] Unlike the situation in *Kjerstad,* 517 N.W.2d at 426, here there had been no prior motion or ruling on this line of questioning. The question was also dissimilar from the comment made by counsel during closing arguments in *Anderson v. Johnson,* 441 N.W.2d 675, 677 (S.D.1989), where we said that, had one been requested, the trial court would have been justified in granting a mistrial. In *Anderson,* we characterized as "unprofessional, offensive, and exceed[ing] the proper bounds of trial advocacy" the statement that the United States' is an "over-lawyered litigious, sue-happy country," and that "there is a phenomenon growing up that is know (sic) here as the litigation industry." Id. Here, the jury was admonished to disregard the question. "Under our settled law, we assume the jury accepted the admonition." *State v. Stetter,* 513 N.W.2d 87, 90 (S.D.1994) (quoting *Anderson,* 441 N.W.2d at 677). Further, the defendants have not shown how the fact that the question was asked affected their substantial rights or affected the jury's verdict. We conclude that the trial court did not abuse its discretion. *See* id. (citing *State v. Kidd,* 286 N.W.2d 120, 121–22 (S.D. 1979)).

### D. Trial Testimony Contradicting Deposition

[¶ 25.] The defendants next contend it was error for the trial court to deny their motions for directed verdict and for judgment notwithstanding the verdict when Keith Carpenter's testimony at trial

was contrary to his deposition testimony concerning whether he looked left before he pulled away from the stop sign. They argue that in his deposition, Keith testified that he did not have a specific recollection of looking left before turning onto the highway, but at trial he recalled that he had looked in both directions but did not remember whether he saw any vehicles on the road. As the law disallows a change in testimony to defeat a motion for summary judgment, the defendants argue, so too should it disallow a change in testimony to defeat a directed verdict. The defendants asked the trial court to apply by analogy *Guilford v. Northwestern Public Service,* 1998 SD 71, ¶ 12, 581 N.W.2d 178, 181 (party against whom summary judgment is sought cannot create issues of material fact by contradicting own earlier sworn testimony) and *Taggart v. Ford Motor Credit Co.,* 462 N.W.2d 493, 501 (S.D.1990) (party cannot contradict one's own prior testimony in an attempt to defeat summary judgment). The defendants believe that the rule established ·in these cases entitled them to a directed verdict or a judgment notwithstanding the verdict based on the state of the record at the time their summary judgment motion was made. On review of a denial of a directed verdict, we examine the evidence in the light most favorable to the prevailing party and give that party the benefit of any reasonable inferences. *Bridge v. Karl's Inc.,* 538 N.W.2d 521, 523 (S.D.1995) (quoting *Westover v. East River Elec.,* 488 N.W.2d 892, 896 (S.D.1992)).

▆▆▆ [¶ 26.] The defendants' argument is unpersuasive. *Taggart* employed the rule to prevent sham issues from being interjected to sidetrack otherwise meritorious summary judgments. The rule is no substitute for the traditional courtroom tests of credibility. It applies only "when there was no explanation for the change in testimony from the deposition to the affidavit" submitted to oppose summary judgment. *Taggart,* 462 N.W.2d at 503 (citation omitted). At the time the court considered the defendants' summary judgment motions there was ample evidence, besides Keith Carpenter's deposition testimony, to demonstrate the existence of genuine issues of material fact. Keith testified that he waited for traffic to pass and his wife testified that she saw him look both ways. Keith's memory was impaired from the severity of his injuries and gaining back some memory is not uncommon for accident victims. When witnesses testify that they did in fact look, the question whether they looked with proper care and saw all that they should have seen is one of fact. *Safirstein v. Nunes,* 241 Cal.App.2d 416, 50 Cal.Rptr. 642, 645 (1966). This change in testimony was classic credibility material, not grist for summary judgment or directed verdict.

### E. Refusal of Defendants' Proposed Jury Instructions

▆▆▆ [¶ 27.] The defendants argue that the trial court erred when it refused ten of their proposed jury instructions. The defendants have the burden of showing prejudicial error, establishing that under the evidence, the jury would probably have returned a different verdict if the proposed instructions had been given. *Ryken v. Blumer,* 307 N.W.2d 865, 869 (S.D.1981) (quoting *Lytle v. Morgan,* 270 N.W.2d 359, 362 (S.D.1978)). We review jury instructions as a whole to decide if prejudicial error occurred. *Anderson,* 441 N.W.2d at 676. Instructions are adequate if they correctly state the applicable law. *Id.* (citing *Wheeldon v. Madison,* 374 N.W.2d 367 (S.D.1985)); *Kuper v. Lincoln–Union Elec. Co.,* 1996 SD 145, ¶ 32, 557 N.W.2d 748, 758 (citation omitted). We decline to discuss a number of the asserted errors in refusing the ten proposed instructions, as we find either no prejudicial error in them or we conclude the questions they raise have been disposed of earlier in this opinion. It is not error for a trial court to refuse to give an instruction that is embodied in another instruction given to the jury. *Herren v.*

*Gantvoort,* 454 N.W.2d 539, 542 (S.D.1990) (citing *State v. Cook,* 319 N.W.2d 809, 814 (S.D.1982)).

### 1. Definition of the Word "Slight"

 [¶ 28.] The trial court gave the South Dakota pattern instruction on contributory negligence. The defendants contend that this instruction does not define the term "slight" correctly. In their proposed instruction four, citing *Wood v. City of Crooks,* 1997 SD 20, ¶ 4, 559 N.W.2d 558, 560, they defined the term as "small in amount, scanty, or meager, in comparison with the negligence if any, of John Wainman." The court's instruction defined the term as "small when compared with the negligence of the defendant." *See Westover,* 488 N.W.2d at 898. The omission of the words "scanty" and "meager" from the instruction did not cause it to be insufficient or incorrect. "What constitutes 'slight' or 'small' contributory negligence naturally varies with the facts and circumstances in each case." Id.

### 2. Failure to See Oncoming Vehicle

 [¶ 29.] Next, the defendants argue it was error to deny their proposed instruction number five that would have instructed the jury that if drivers look in the direction of an approaching vehicle, they are charged with having seen it. The Carpenters counter that the instructions given, when considered as a whole, correctly stated the law on keeping a proper lookout. While none of the instructions specifically inform the jury that individuals are considered to have seen an oncoming vehicle in the direction they look, the instructions do state that drivers have the duty to keep a lookout that ordinarily prudent persons would keep, and that failure to yield to approaching traffic that they could have seen is negligence. The defendants' proposed instruction might have been helpful to the jury on the issue of Keith Carpenter's contributory negligence had it decided that Wainman was in the radius of danger, but the instructions as given correctly stated the law. As the defendants do not show how they were prejudiced by having their proposed instruction denied, the trial court did not err.

### 3. "Pacing" as Lawful Police Activity

 [¶ 30.] The trial court gave instruction number nineteen, which informed the jury that speed limits do not apply to authorized vehicles measuring the speed of another vehicle by "pacing" that vehicle; however, it must be done "with due regard for the safety of all persons." *See* SDCL 32–31–4. It stated also that the failure to follow this standard of care is negligence. The defendants argue it was error for the trial court to refuse to include an additional paragraph, as drafted in their proposed instruction number seven, that would have informed the jury that this statute takes precedence over any City of Belle Fourche ordinance or policy prohibiting pacing. They claim this language should have been included because testimony elicited from a former City council member suggested that the City's pursuit policy did not allow pacing. After reviewing this testimony, we think the defendants misread its import. The testimony merely revealed that the City's policy does not mention the practice of pacing. This is not a basis for including the requested language in the instruction. The trial court did not err.

### 4. Sudden Emergency Doctrine

 [¶ 31.] The defendants' proposed instruction number eleven explained the sudden emergency doctrine. They believe it should have been given because the Carpenters' expert testified that Wainman should have turned his patrol car to his right to avoid the accident, allowing him to pass behind Keith's vehicle. They argue that because there was another course of action available after the dangerous situation was perceived, the instruction was necessary.

[¶ 32.] In *Meyer v. Johnson,* 254 N.W.2d 107 (S.D.1977), we set out the guideline for sudden emergency instructions:

Although we believe unavoidable accident instructions should be restrictively used we do not favor . . . total exclusion. In the ordinary negligence action the jury is adequately instructed on the ultimate issues by instructions on negligence, contributory negligence, burden of proof, and proximate cause. Further instruction on unavoidable accident usually is unnecessary. *Such instruction may properly be given in those cases where there is evidence that something other than the negligence of one of the parties caused the mishap.* It is particularly apt where the further element of "surprise" is present such as the sudden and unexpected presence of ice, the blow-out of a tire, the malfunction of brakes, or other mechanical failure.

*Id.* at 110 (omission in original) (emphasis added) (quoting *Cordell v. Scott*, 79 S.D. 316, 322–323, 111 N.W.2d 594, 598 (1961)). Here, there was sufficient evidence of Officer Wainman's negligence presented to exclude this instruction that would have served only to improperly emphasize the defendants' position. *See id.; Del Vecchio*, 293 N.W.2d at 476. As the facts did not call for this instruction, it was not error to refuse it.

### 5. *Assumption of Risk Doctrine*

 [¶ 33.] Lastly, the defendants assert that the court should have given an instruction on assumption of the risk based on constructive knowledge. Thus they proposed their instructions numbered twelve and thirteen. They argue that a reasonable motorist would have recognized that not looking to the left when leaving the stop sign was hazardous, that Keith voluntarily proceeded onto the highway with constructive knowledge of the risk of injury, and that therefore knowledge of the danger was imputed to Keith. The trial court granted the Carpenters' motion for a directed verdict on the issue of assumption of the risk, and refused to give the proposed instructions.

 [¶ 34.] The proposed instructions explained the three elements of assumption of the risk: "1) that the plaintiff had actual or constructive knowledge of the existence of the specific risk involved; 2) that the plaintiff appreciated the risk's character; and 3) that the plaintiff voluntarily accepted the risk, having had the time, knowledge, and experience to make an intelligent choice." S.D. Pattern Jury Instruction 13–01 (Rev. 1994; Rev for gender 1995). *See Thomas*, 283 N.W.2d at 259 (citing *Kessler v. Bowie Mach. Works, Inc.*, 501 F.2d 617 (8th Cir.1974); *Stenholtz v. Modica*, 264 N.W.2d 514 (S.D. 1978); *Bartlett v. Gregg*, 77 S.D. 406, 92 N.W.2d 654 (1958)). The comments to this instruction state that the difference between assumption of the risk and contributory negligence "is frequently one between risks which were in fact known to the plaintiff, or so obvious that [the plaintiff] must be taken to have known of them, and risks which [the plaintiff] merely might have discovered by the exercise of ordinary care." (alterations in original) (quoting *Bartlett*, 77 S.D. 406, 92 N.W.2d at 658). The evidence here does not show that Keith Carpenter had actual knowledge of Officer Wainman's vehicle approaching faster than the posted speed limit. "A person has constructive knowledge of a risk if it is plainly observable so that anyone of competent faculties is charged with knowledge of it." *Nelson v. Nelson Cattle Co.*, 513 N.W.2d 900, 905 (S.D.1994) (citing *Westover*, 488 N.W.2d at 901). There was testimony at trial that it is difficult for drivers viewing oncoming vehicles from where Keith was located to determine the speed of oncoming traffic. Turning to the second element, although people may not close their eyes to obvious dangers, and cannot recover where they were in "possession of facts from which [they] would be legally charged with appreciation of the danger," *Goepfert v. Filler*, 1997 SD 56, ¶ 9, 563 N.W.2d 140, 143, the evidence supports the conclusion that Keith did not knowingly appreciate the risk. Finally, the evidence does not sup-

port the third element, that Keith "voluntarily accepted the risk"; rather, it shows that he simply did not appreciate the danger. This does not support giving the instruction on assumption of the risk, and the trial court did not err in refusing to give it.

[¶ 35.] The defendants have failed to show that the trial court's denial of the proposed instructions prejudiced them or that it is likely that the jury would have returned a different verdict if their instructions had been given. *See Cook*, 319 N.W.2d at 814. After comparing the defendants' proposed jury instructions with the instructions given at trial, we find that the trial court did not err in refusing the proposed instructions.

[¶ 36.] Judgment affirmed.

[¶ 37.] MILLER, Chief Justice, and SABERS, AMUNDSON, and GILBERTSON, Justices, concur.